DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the Lucas County Court of Common Pleas, Juvenile Division, which terminated appellant Stacy D.'s parental rights to Kierra D. and granted permanent custody of Kierra D. to Lucas County Children's Services ("LCCS"). For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} Appellant is the natural father of Kierra, who was born on December 1, 1999. In approximately November 2000, before Kierra was one year old, appellant began an 18 month prison sentence. He was released in May 2002. LCCS became involved with Kierra in September 2001 when Kierra's mother left her a month earlier with a cousin and did not return. (Kierra's mother eventually returned, but she did not participate in services offered by LCCS. She is not a party to this appeal.) At that time, LCCS filed a complaint in dependency and neglect and a motion for shelter care hearing. The court granted temporary custody of Kierra to the cousin, Kiffany H. and subsequently adjudicated Kierra a neglected child.
 {¶ 3} LCCS caseworker Linda Mosely became involved with the case in September 2001. At that time, appellant's whereabouts were unknown. Mosely testified that she sent letters and copies of case plans to appellant's last known address, but appellant did not respond. (It is undisputed, however, that appellant wrote a letter to the court in October 2001 explaining that he was in the Oakwood Correctional Facility in Lima, Ohio.) Mosely did not meet fact-to-face with appellant until August 2002, approximately three months after appellant was released from prison.
 {¶ 4} Mosely's meeting with appellant took place at appellant's home. She learned that he was married and had three children with his wife, all of whom were living at home with them. Kierra, appellant's fourth child, is the product of an extra-marital relationship. Also living at home with appellant, his wife, and their three children, is appellant's step-child and a 17-year-old boy, Lawrence J.; Lawrence J. is a relative of appellant's wife whom LCCS placed in the home in August 2002. Appellant's home has three bedrooms, and Mosely saw nothing in the house at that time that would cause LCCS to become involved with the children living there.
 {¶ 5} Mosely testified that the case plans called for appellant to show an "active interest" in Kierra; to show an active interest, appellant was to work with LCCS in getting a needs assessment, pay child support, establish paternity, and regularly visit with his child. (Subsequently, the case plan was amended to include mental health, domestic violence/anger management, and substance abuse services for appellant.) At their meeting in August, appellant told Mosely that he was not interested in participating in any services being offered by LCCS. Appellant told Mosely that his wishes for the child were that she would remain with Kiffany; he merely wished to protect his parental rights so that he could visit with her. In his own testimony, appellant indicated that he did not wish to take custody of Kierra but did not want to lose his parental rights either. For appellant, the best scenario would be for Kierra to stay with Kiffany, but if he had a choice of either taking custody of her or losing his parental rights, he would take custody.
 {¶ 6} Mosely testified that appellant did not participate in any of the services offered to him, despite the fact that he admitted to engaging in domestic violence and the record established drug use. Appellant testified that he completed such services while incarcerated, but he did not provide any evidence to show the type of services, how often he attended, whether he completed the courses satisfactorily, and so forth. Appellant did not make voluntary support payments to his daughter's caretaker, he allowed his child support obligation to go into arrears, and, while he visited with Kierra, he did so only sporadically. Moseley testified Kierra is doing very well in her current placement, has no special needs (except perhaps a slight speech delay), and that she refers to Kiffany as her mother. Mosely expressed her opinion that it would be in Kierra's best interests to be adopted by her current caretaker. The guardian ad litem also recommended permanent custody to LCCS, indicating that permanent custody to LCCS would be in Kierra's best interests.
 {¶ 7} Appellant testified about his relationship with Kierra. According to appellant, he "practically stayed" with Kierra and her mother from the time of Kierra's birth until his incarceration some nine months later. Appellant testified that he has had Kierra at his home, at times overnight, and she has a good relationship with her half-siblings. Appellant also pointed out that he has always cared for his other children, and that LCCS had previously placed Lawrence J. in his home.
 {¶ 8} Eventually, LCCS sought and was granted permanent custody of Kierra, and the goal was for her to be adopted by Kiffany, her caretaker. In making its decision to grant permanent custody to LCCS, the court found that LCCS made reasonable attempts to reunify the child with her parents but that the conditions causing Kierra's removal from the home were not remedied. The court also found that the parents had "demonstrated a lack of commitment toward the child by failing to regularly support, visit or communicate with the child when able to do so"; that the parents "refused to cooperate with the services offered"; that they have "been unwilling to provide the basic necessities for their child"; and that they have "failed to visit, provide support and to provide housing, food and clothing." The court also noted appellant's frequent incarcerations and how the incarcerations prevent him from caring for his daughter. Finally, the court found that a grant of permanent custody to LCCS was in Kierra's best interests.
 {¶ 9} Appellant now appeals, setting forth the following assignments of error:
 {¶ 10} "The trial court's grant of permanent custody was not supported by clear and convincing evidence and the determination that LCCSB made reasonable efforts to prevent the removal of the minor child was in error and prejudiced the appellant.
 {¶ 11} "The trial court erred to the prejudice of the appellant when it found that it was in the child's best interest that the plaintiff-appellee be granted permanent custody of the minor child."
 {¶ 12} R.C. 2151.414(B)(1) provides:
 {¶ 13} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 14} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 15} "(b) The child is abandoned.
 {¶ 16} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 17} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 18} "* * *."
 {¶ 19} In this case, the trial court proceeded under2151.414(B)(1)(a), which requires the court to make two findings: (1) that a grant of permanent custody to the agency is in the child's best interest, and (2) that the child cannot or should not be placed with either parent within a reasonable period of time.
 {¶ 20} In order to find that a child cannot or should not be placed with either parent within a reasonable period of time, a court must make a finding under R.C. 2151.414(E). In this case, the court made findings under R.C. 2151.414(E)(1), (2), (4), (14), and (16). Those sections provide:
 {¶ 21} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 22} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 23} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
 {¶ 24} "* * *;
 {¶ 25} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 26} "* * *;
 {¶ 27} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 {¶ 28} "* * *.
 {¶ 29} "(16) Any other factor the court considers relevant."
 {¶ 30} As noted in the statute, a court's findings under R.C.2151.414(E) must be supported by clear and convincing evidence. The Supreme Court of Ohio has held that clear and convincing evidence is:
 {¶ 31} "[T]hat measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford
(1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 32} In addition to finding that the child cannot be placed with a parent within a reasonable period of time, before granting permanent custody to a children's services agency, the court must also find that doing so is in the best interests of the child. R.C. 2151.414(D) lists the factors the court shall consider in order to determine the best interests of the child. That section provides:
 {¶ 33} "(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 34} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 35} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 36} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 37} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 38} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 39} "* * *."
 {¶ 40} Appellant's first assignment of error essentially challenges the court's finding that Kierra cannot or should not be placed with appellant within a reasonable period of time, and his second assignment of error challenges the court's finding that granting permanent custody of Kierra to LCCS is in Kierra's best interest. We shall address each assignment of error in turn.
 {¶ 41} As noted, in finding that Kierra cannot or should not be placed with either parent within a reasonable amount of time, the court made findings under R.C. 2151.414(E)(1), (2), (4), (14), and (16). We find that the record clearly and convincingly supports the findings under (1), (4), and (14). First, relevant to subdivision (1), appellant took no part in the services offered to him by LCCS. Relevant to (4), appellant admitted that he allowed his child support obligation to go into arrears, at one time amounting to over $1,000 on an obligation of $50 per month. He testified that the amount in arrears was mostly discharged, but only because the government seized his tax return. And, though he testified that he provided for Kierra in the nine or so months that he lived with her and her mother, he also indicated that, during that time, Kierra's mother was on welfare. Also relevant to subdivision (4), appellant's visits with his daughter were sporadic, a fact appellant admitted in his testimony, saying "I ain't seen her on like weeks, you know, it might be like two or three weeks and in-between the time that I might see her." Kiffany testified that appellant's visits are "off and on" — depending on the month, he might see Kierra two or three times. Likewise, though appellant filed a motion for custody two weeks before the hearing on this matter, appellant maintained throughout the hearing and in his dealings with LCCS that he was not really interested in having custody; he simply did not want his rights terminated. The record clearly and convincingly establishes appellant's lack of commitment to Kierra. For these same reasons, we also find that the record establishes by clear and convincing evidence that, pursuant to subdivision (14), appellant is unwilling to provide "food, clothing, shelter, and other basic necessities" for Kierra.
 {¶ 42} Nevertheless, appellant contends that LCCS is disingenuously seeking permanent custody of Kierra when it previously placed Lawrence J., a 17-year-old boy in appellant's home. Mosely testified that appellant was either incarcerated or not living in the home when this child was placed there; the child was placed in the home in the custody of appellant's wife. Appellant, on the other hand, contends that he was living in the home when the child was placed there. At any rate, Lawrence J. was the subject of a hearing on the same day as the instant hearing and, for reasons not clear in the record, the child was removed from the home. The trial court apparently believed the testimony that appellant was not living in the home when the child was placed there, and we find that the record clearly and convincingly supports that finding.
 {¶ 43} Appellant's first assignment of error is found not well-taken.
 {¶ 44} In his second assignment of error, appellant challenges the trial court's finding that a grant of permanent custody to LCCS was in Kierra's best interests. According to R.C. 2151.414(D), the court is allowed to consider, among other things, the child's relationship with relatives and her caregiver, the "custodial history" of the child, and the child's need for a "legally secure placement." The record shows that Kierra has lived with Kiffany since she was approximately 18 months old (she was three years and three months old at the time of the hearing), that she is well-bonded with Kiffany, that she thinks of Kiffany as her mother, and that she is developing normally. On the other hand, there was also testimony that Kierra has formed a relationship with appellant and his other children. However, important to the court in making its decision was Kierra's need for a "legally secure placement." In announcing its decision from the bench, the court noted:
 {¶ 45} "[T]he Court finds first of all, that [appellant's] concern and interest in not losing custody of his daughter in this case on its surface would seem to be a reasonable and appropriate parental thing.
 {¶ 46} "But the Statute is not written for parents. The law in this case is written for children and permanency, stability, and consistency is what the Court has to consider and that's what the standard is in2151.414, R. [sic]. And that's what they focus on."
 {¶ 47} The court is correct that the statute forbids the court from considering "the effect the granting of permanent custody to the agency would have upon any parent of the child." R.C. 2151.414(C). The needs of the child are paramount. In this case, though granting legal custody to Kiffany was a possibility, the court apparently believed that granting permanent custody to LCCS to facilitate Kiffany's adoption of Kierra was the better choice. Kierra has lived with Kiffany much of her life, and Kiffany has cared for her and provided for her. For the sake of stability, permanency, and consistency, the trial court was correct in making that placement legally secure. It is unclear what sort of inconsistency and upheaval could occur in the future if this placement were not made permanent. We find that the court's conclusion that a grant of permanent custody to the agency is in Kierra's best interests is supported by clear and convincing evidence.[1]
 {¶ 48} Appellant's second assignment of error is found not well-taken.
 {¶ 49} Upon due consideration, we find that substantial justice was done appellant, and the decision of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the court costs of this appeal.
Judgment affirmed.
Mark L. Pietrykowski, J., Judith Ann Lanzinger, J., Arlene Singer, J., concur.
[1] Appellant contends that, since Kiffany was available to take legal custody of Kierra, the court should have ordered legal custody to Kiffany instead of permanent custody to LCCS. According to appellant, this result is mandated by R.C. 2151.412(G)(5). We disagree. That section applies to case plans, not to a court's options on a permanent custody motion.