DECISION AND JUDGMENT ENTRY
{¶ 1} Michelle Hilyard is the mother of ten children for whom she and James Hilyard, the children's father, lost their parental rights in a neglect/dependency proceeding. Mrs. Hilyard appeals the court's decision terminating her parental rights and granting permanent custody of the children to the Vinton County Department of Job and Family Services ("VCDJFS").
 {¶ 2} First, Mrs. Hilyard asserts the trial court erred in finding it was not in the best interests of the children to grant custody of them to her or Christine Garvin, the children's paternal aunt. However, the record provides ample support for the trial court's findings that neither Mrs. Hilyard nor the paternal aunt were suitable for placement and that it was in the children's best interest for VCDJFS to assume legal custody over them.
 {¶ 3} Mrs. Hilyard also contends the trial court erred in failing to appoint separate counsel and a guardian ad litem for the children. However, because there is no evidence that the dual representation resulted in an actual or apparent conflict. Thus, we conclude the court did not err in appointing a licensed attorney to serve as both guardian ad litem and legal counsel for the children. Because competent, credible evidence exists to support the trial court's judgment and the judgment accords with law, we affirm.
 I. FACTUAL BACKGROUND {¶ 4} In June 2003, VCDJFS filed separate complaints alleging neglect and dependency concerning each of the ten Hilyard children, who then ranged in age from nine months to 12 years old. The court removed the children from their parents' home, which was determined to be not fit for habitation, and placed them in the temporary custody of VCDJFS. The court appointed attorneys to represent the mother, Michelle Hilyard, and the children's father, James Hilyard, and appointed Sandra Brandon, a licensed attorney, as guardian ad litem for all the children.
 {¶ 5} In September 2003, an adjudication hearing occurred on the neglect and dependency allegations. The children's parents, their counsel, and the guardian ad litem were all present.
 {¶ 6} The court entered an order of adjudication and found by clear and convincing evidence: all ten of the children were dependent children under R.C. 2151.04; five of the children were neglected children under R.C. 2151.03 due to the father's and mother's educational neglect of the children; three of the children were neglected children under R.C. 2151.03 due to problems with lice, body odor and dental neglect; two of the children were dependent children under R.C. 2151.04 because their condition or environment was such to warrant the state, in the interests of the children, in assuming their guardianship. Immediately following its adjudication of the children, the court made a disposition of temporary custody to VCDJFS and ordered the agency to develop a case plan that contained a goal of reunification with the parents.
 {¶ 7} In November 2003, both parents were arrested and charged with the rapes of two of their children. That same month, the children's paternal grandmother, Judy Sledd, filed a pro se motion for custody of all ten children, together with an affidavit of indigency requesting counsel; she received appointed counsel a week later. By agreement of the parties and with the court's permission, VCDJFS set up supervised visitation for one to two hours a month between Sledd and the children.
 {¶ 8} At the annual review hearing held in May 2004, Christine Garvin also filed a motion for legal custody together with an affidavit of indigency requesting court-appointed counsel. At the hearing, the court ordered appointed counsel for Garvin and a home study on Garvin's and Sledd's residences for possible placement of the children. The court also permitted supervised visitation of one to two hours a month between Garvin and the children.
 {¶ 9} In July 2004, VCDJFS filed a motion requesting permanent custody of each of the ten children. At a hearing held in September 2004, the court explained the rights and potential consequences associated with a permanency hearing. Those present at the hearing included the children's father, mother, Garvin, Sledd, and their respective appointed counsel.
 {¶ 10} In October and November 2004, the children's father and mother were both convicted of two counts of sexual battery under R.C 2907.03(A)(5), which involves a parent engaging in sexual conduct with his or her child. The court sentenced the father to a prison term of ten years and the mother to a prison term of five years.
 {¶ 11} By a November 2004 order, the court appointed Brandon, who was the children's guardian ad litem, to also serve as the children's attorney. The guardian ad litem reviewed agency records and met with both parents, the children, Sledd, Garvin and her family, other family members, and the children's foster parents. The guardian ad litem prepared reports in September 2003 and December 2004 detailing her investigation and recommendations. In her December 2004 report and in her testimony at the permanent custody hearing held in March 2005, Brandon opined that neither Sledd nor Garvin was a suitable relative placement; instead she recommended that permanent custody of all of the children be granted to VCDJFS. No party or other attorney in the case objected to Brandon's dual representation until the permanent custody hearing.
 {¶ 12} In May 2005, the court found by clear and convincing evidence that the children's best interest would be served by granting permanent custody to VCDJFS. Specifically, under R.C.2151.414(B)(1)(d), the trial court found that all ten children had been in the temporary custody of VCDJFS for 12 months or more of a consecutive 22-month period and that the children should not and cannot be placed with the father and mother.
 {¶ 13} Concerning the best interests of the children, the court found under R.C. 2151.414(D)(1) and (2) that none of the children were bonded to their parents, Sledd or Garvin, but had bonded with their foster parents and families, and the children whose wishes were considered either had no preference as to their placement or did not wish to live with their parents or either relative. Under R.C. 2151.414(D)(3), the court found that the children had been in the temporary custody of VCDJFS since June 12, 2003. Under R.C. 2151.414(D)(4), the trial court found that the Hilyard children's parents, grandmother and aunt were not suitable placements for the children, all the children were doing well in their foster homes where their various needs were being met, and permanent placement of the children with their foster families could not be achieved without a grant of permanent custody to VCDJFS. Under R.C. 2151.414(D)(5) and (E)(7), the trial court found that the children should not and cannot be placed with either their father or mother because both parents had been convicted of two counts of sexual battery concerning their children. The court denied Garvin's and Sledd's motions for legal custody of the children and entered judgment granting permanent custody of all ten Hilyard children to VCDJFS.
 II. ASSIGNMENTS OF ERROR {¶ 14} In her appeal, Michelle Hilyard raises the following assignments of error:
1. Appellant was denied her constitutional rights to due process.
2. The trial court erred in finding that the Vinton County Department of Job and Family Services had made a reasonable effort to reunify the minor children with the appellant or a reasonable effort in looking for suitable relative placement.
3. The trial court erred in permitting one person to serve as both Guardian Ad Litem and as legal counsel for all ten
(10) children when there was an obvious conflict.
 III. LEGAL STANDARDS GOVERNING PERMANENT CUSTODY DECISIONS AND OUR REVIEW A. Burden of Proof {¶ 15} An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Estate of Haynes (1986),25 Ohio St.3d 101, 103-104.
 B. Standard of Review {¶ 16} Even under the clear and convincing standard, our review is deferential. If the trial court's judgment is supported by some competent, credible evidence going to all the essential elements of the case, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. Inre Myers III, Athens App. No. 03CA23, 2004-Ohio-657, ¶ 7, citingState v. Schiebel (1990), 55 Ohio St.3d 71, 74. The credibility of witnesses and weight of the evidence are issues primarily for the trial court, as the trier of fact. In re Ohler, Hocking App. No. 04CA8, 2005-Ohio-1583, ¶ 15, citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80.
 C. Parental Rights and Children's Best Interest {¶ 17} A parent's right to raise his or her child is an "essential" and "basic civil right." In re Murray (1990),52 Ohio St.3d 155, 157, quoting Stanley v. Illinois (1972),405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551. A parent's rights, however, are not absolute. While termination of parental rights is an alternative of last resort, it is authorized when necessary for the welfare of the child. In re Cunningham (1979),59 Ohio St.2d 100, 105; In re Wise (1994), 96 Ohio App.3d 619, 624. "[T]he natural rights of a parent are * * * always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" In re Cunningham,
quoting In re R.J.C. (Fla.App. 1974), 300 So.2d 54, 58.
 D. The Agency's and Court's Responsibility {¶ 18} R.C. 2151.413(D)(1) requires a public children's services agency that has had temporary custody of a child for 12 or more months of a consecutive 22-month period to file a motion requesting permanent custody of the child. R.C. 2151.414(A)(1) then requires the trial court to hold a hearing. The primary purpose of the hearing is to allow the trial court to determine whether permanently terminating the parental relationship and awarding permanent custody to the agency would serve the child's best interests. See R.C. 2151.414(A)(1).
 {¶ 19} R.C. 2151.414(B)(1)(d) permits a trial court to grant permanent custody of a child to an agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and the child has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period.
 {¶ 20} R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.[1] Under R.C. 2151.414(E), the court must also find that the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 IV. PLACEMENT OF CHILDREN {¶ 21} Michelle Hilyard's first and second assignments of error are related. Together they assert the trial court erred in granting custody of the children to VCDJFS rather than reunite the children with their parents or place the children with a relative, Christine Garvin, who was available to accept legal custody. We assume without deciding that Hilyard has standing to raise the issue of placement with Garvin.
 {¶ 22} Mrs. Hilyard contends that R.C. 2151.412(G) favors placement of children with parents or relatives over placement with a children's services agency. R.C. 2151.412(G) is directed at a court's review of a case plan. See, In re Keaton, supra;In re Kierra D., Lucas App. No. L-03-1164, 2004-Ohio-277; Inre Harris (Nov. 2, 2000), Cuyahoga App. No. 76631. To the extent R.C. 2151.412(G) is applicable, it and R.C. 2151.414(D) merely provide guidelines for consideration in placing a child. The statutes do not require that custody be awarded to a relative rather than to an agency. In re Keaton, In re P.P.; In reBranstetter (May 18, 2001), Montgomery App. No. 18539.
 {¶ 23} A court considering a custody motion in a dispositional hearing possesses discretion to award legal custody to either parent or to another person who files a proper motion requesting legal custody. See R.C. 2151.353(A)(3); In reKeaton, Ross App. No. 04CA2785, 2004-Ohio-6210; In re Dyal,
Hocking App. No. 01CA11, 2001-Ohio-2383; In re Patterson
(1999), 134 Ohio App.3d 119.
 {¶ 24} Mrs. Hilyard contends the trial court should have reunited the children with her and the children's father. However, both Michelle and James Hilyard were convicted of sexual battery offenses against two of the children. The trial court was thus mandated by statute to make a determination, as it did in this case, that VCDJFS is not required to make reasonable efforts to reunite the children with their parents. See, R.C. 21511.419(A)(2)(a)(iv). Thus, the court did not err in granting legal custody to VCDJFS rather than reunite the children with their mother or father.
 {¶ 25} Mrs. Hilyard also contends the trial court erred in failing to place the children with Christine Garvin, their paternal aunt. However, a juvenile court is not required to consider relative placement before granting the motion for permanent custody. Nor must the court find, by clear and convincing evidence, that a relative is an unsuitable placement option prior to granting the permanent custody request. In reKeaton; In re Dyal, supra. Relatives seeking the placement of the child are not afforded the same presumptive rights that a natural parent receives as a matter of law. Id.; In re Davis
(Oct. 12, 2000), Cuyahoga App. No. 77124.
 {¶ 26} The willingness of a relative to care for a child does not alter the statutory factors to be considered in granting permanent custody. In re Keaton; In re Dyal; In re Jefferson
(Oct. 25, 2000), Summit App. No. 20092. The child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. In reAdoption of Ridenour (1991), 61 Ohio St.3d 319, 324. Accordingly, a court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. In reKeaton; In re P.P., Montgomery App. No. 19582, 2003-Ohio-1051.
 {¶ 27} The trial court is vested with discretion to determine what placement option is in the child's best interest, and the court's exercise of that discretion should be accorded the utmost respect. In re Keaton; In re Dyal; In re Patterson, supra. See, e.g., Davis v. Flickinger (1997), 77 Ohio St.3d 415. Therefore, an appellate court will not overturn a trial court's custody decision unless the trial court has acted in a manner that can be characterized as arbitrary, unreasonable or capricious. In reDyal, supra, citing Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 28} Garvin did not file a motion for custody of the Hilyard children until May 26, 2004, almost a year after VCDJVS assumed temporary custody of the children and had placed the children in foster care. VCDJFS conducted a study of Garvin's home for possible relative placement and set up visitation for her with the Hilyard children.
 {¶ 29} Garvin testified at the permanent custody hearing about why she should be awarded legal custody of the children. She testified she was 32 years old and was married with four children: two children from her current marriage, and two sons from prior relationships. Garvin acknowledged that she had allowed her oldest son to live with her mother, Sledd, almost since birth and made little or no attempt to make sure that his needs, particularly his educational needs, were being met. Garvin admitted that sometimes she did not even have an address or phone number to reach her son or Ms. Sledd.
 {¶ 30} Garvin testified that she earns annually approximately $25,000 as a bus driver. Her husband, who is unable to work due to seizures, earns no income but has applied for social security disability income. The home study conducted on Garvin showed that she lives in a small, nice three-bedroom home in a good area but that the home would be very crowded if the five people already living in the home were joined by ten more children. Garvin testified that if she were granted legal custody of the children she and her husband would remodel her home or possibly buy a larger home to accommodate the children.
 {¶ 31} Garvin admitted that she had only seen the children two times since 1998 and was now a stranger to several of the children. She testified that she did not believe that her brother, the Hilyard children's father, committed the acts of sexual battery for which he was convicted.
 {¶ 32} The record clearly indicates that VCDJFS and the trial court considered Garvin as a placement option for the Hilyard children but concluded she was unsuitable and should not be granted legal custody of the children. The record supports this conclusion. Because competent and credible evidence supports the trial court's determination that it is in the best interests of the children that permanent custody of them be granted to VCDJFS, we overrule appellant's first and second assignments of error.
 V. APPOINTMENT OF LEGAL COUNSEL AND GUARDIAN AD LITEM {¶ 33} In her third assignment of error, Michelle Hilyard asserts the trial court erred in permitting one person to serve as both guardian ad litem and legal counsel for all ten children because there was a conflict between the interests of at least one of the children and the position of the guardian ad litem in this case. Specifically, Mrs. Hilyard argues that one of the children expressed a desire to live with a family member, but the guardian ad litem recommended that permanent custody be granted to VCDJFS.
 {¶ 34} As previously noted, the trial court appointed Sandra Brandon, a licensed attorney, as the guardian ad litem for all ten Hilyard children and subsequently appointed Brandon in a separate entry to also serve as legal counsel for them. The trial court directed Brandon to notify it within 14 days of her appointment as the children's attorney if she believed there was any conflict of interest in her dual representation.
 {¶ 35} Attorney Brandon did not notify the court she believed there might be a potential conflict of interest. Brandon did advise the court, however, that Angela had expressed an interest at one time in living with a family member, Ms. Sledd, her grandmother. The court inquired into Angela's expressed wishes, and Brandon further advised the court that Angela was not serious about it and was more concerned about staying in contact with her siblings.
 {¶ 36} Brandon stated her belief that no conflict in interest existed in her serving as the children's guardian ad litem and attorney, and the court agreed. Notably, Brandon was also subject to full cross-examination by the parties regarding her investigation of the case.
 {¶ 37} R.C. 2151.281 and Juv.R. 4(B) mandate that the juvenile court appoint a guardian ad litem to protect the interests of a child in a juvenile court proceeding involving allegations of abuse or neglect of the child. Under R.C.2151.352[2] and Juv.R. 4(A),[3] every child who is the subject of a juvenile court proceeding also has the right to be represented by counsel and, if indigent, to be appointed counsel to represent the interests of the child. State ex rel.Asberry v. Payne (1998), 82 Ohio St.3d 44, 48; In re Emery,
Lawrence App. No. 02CA40, 2003-Ohio-2206, ¶ 9. R.C. 2151.281(H) and Juv.R. 4(C)(1) permit a licensed attorney to serve as both attorney and guardian ad litem for a child in juvenile court proceedings provided the court makes an explicit dual appointment and no conflicts arise due to the dual representation. See In reEmery; In re Duncan/Walker Children, supra at 844-845. The court expressly ordered dual representation in this case. Thus, we focus on the issue of conflicts.
 {¶ 38} As recognized in Juv.R. 4(C)(1), the roles of guardian ad litem and attorney are not always compatible, as they serve different functions. In re Baby Girl Baxter (1985),17 Ohio St.3d 229, 232; Emery, supra. "The role of guardian ad litem is to investigate the ward's situation and then to ask the court to do what the guardian feels is in the child's best interest. The role of the attorney is to zealously represent his client within the bounds of the law." Id. Thus, a conflict between the roles may arise when a child's wishes differ from what the guardian ad litem believes is in the child's best interests. In that event, the attorney must bring potential conflicts to the attention of the court, and where he or she fails to do so, the court may be obliged to act sua sponte. See In re Howard (1997),119 Ohio App.3d 201, 206. A new guardian ad litem should be appointed if either the court or the attorney finds there is a conflict. R.C.2151.281(H); Juv.R. 4(C)(2). We conduct a de novo review of the record to determine if evidence of a conflict existed that would have required the trial court to appoint independent counsel for some or all of the children. See, In re Baby Girl Baxter,
supra; Williams, infra; In re Brooks, Franklin App. No. 04AP-164, 2004-Ohio-3887, ¶ 79-87, appeal not allowed,103 Ohio St.3d 1495, 2004-Ohio-5605.
 {¶ 39} The Ohio Supreme Court has concluded that a child who is the subject of a juvenile court proceeding to terminate parental rights is entitled to independent counsel in certaincircumstances. In re Williams, 101 Ohio St.3d 398,2004-Ohio-1500, syllabus, ¶ 17. A court's determination whether a child actually needs independent counsel should be made on a case-by-case basis, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child. In re Williams, ¶ 17; In reBrooks, supra, at ¶¶ 79, 87. Generally, the appointment of independent counsel is warranted when a child has "repeatedly expressed a desire" to remain or be reunited with a parent but the child's guardian ad litem believes it is in the child's best interest that permanent custody of the child be granted to the state. Id.
 {¶ 40} Here, unlike the circumstances in Williams, the record does not reflect that any of the Hilyard children "consistently and repeatedly" expressed a strong desire or had interests that were inconsistent with the recommendations of the guardian ad litem. Cf. In re Smith (1991), 77 Ohio App.3d 1. Upon being advised by the guardian ad litem that one of the children had at one time expressed in interest in living with appellant, the court appropriately made further inquiry and was advised that the child was not serious and was more concerned about staying in contact with her siblings. No contrary evidence was adduced. Cf. In re Emery (remanding for further proceedings because the trial court did not inquire further upon being advised that one of the children's desires regarding custody may not have been consistent with the guardian ad litem's recommendation).
 {¶ 41} Because appellant has failed to demonstrate either an apparent or actual conflict in the guardian ad litem's dual representation as attorney for the children, we conclude the trial court conducted an appropriate inquiry and proceeded accordingly. Thus, we overrule appellant's third assignment of error.
 VI. CONCLUSION {¶ 42} Having overruled all of appellant's assignments of error, we affirm the judgment of the trial court granting permanent custody of the Hilyard children to VCDJFS.
Judgment Affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Vinton County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. Kline, J.: Concur in Judgment and Opinion.
[1] R.C. 2151.414(E)(7) is applicable here and provides, in relevant part: (7) The parent has been convicted of or pleaded guilty of one of the following: * * * (d) An offense under section * * * 2907.03 * * * of the Revised Code * * * and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense; (e) A conspiracy or attempt to commit, or complicity in committing an offense described in division (E)(7)(a) or (d) of this section. * * *"
[2] R.C. 2151.352 provides, in relevant part, that "[a] child, or the child's parents, custodian, or other person in loco parentis of such child is entitled to representation by legal counsel at all stages of the proceedings under this chapter or chapter 2152 of the Revised Code and if, as an indigent person, any such person is unable to employ counsel, to have counsel provided for the person * * *. Counsel must be provided for a child not represented by the child's parent, guardian, or custodian. If the interests of two or more such parties conflict, separate counsel shall be provided for each of them.
[3] Juv.R. 4(A) provides that "[e]very party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding. When the complaint alleges that a child is an abused child, the court must appoint an attorney to represent the interests of the child. This rule shall not be construed to provide for a right to appointed counsel in cases in which that right is not otherwise provided for by constitution or statute.