DECISION AND JUDGMENT ENTRY
{¶ 1} Joann Simmerly, fka Johnson, appeals the judgment of the Hocking County Court of Common Pleas, Juvenile Division, granting permanent custody of her biological children to Hocking County Children Services ("HCCS").[1] Appellant argues that the judgment is against the manifest weight of the evidence. We disagree because the record contains evidence that despite counseling, medical treatment and agency assistance for over three years, Mrs. Simmerly still does not possess suitable parenting skills and remains unable to provide her children with a safe and stable environment. Due to her unresolved mental health issues, the record clearly supports the trial court's conclusion that the children cannot be returned to her custody within a reasonable period of time. Therefore, the court's conclusion that it is in the children's best interest to terminate Mrs. Simmerly's parental rights is in accordance with the weight of the evidence.
 {¶ 2} In June 2000, David Johnson complained to the Hocking County Sheriff's Department that his wife, Joann, abused his natural daughter Brianna Ohler. HCCS removed Brianna and Rabecka Johnson from the home. In October 2000, Appellant gave birth to Dorothy Johnson and HCCS received temporary custody of her as well. Appellant and David voluntarily admitted Dorothy and Rabecka's dependency and the abuse of Brianna. In June 2001, the trial court returned legal custody to Appellant and David and ordered HCCS to provide protective supervision. HCCS continued protective supervision through July 2002.
 {¶ 3} In October 2002, HCCS received a referral alleging that Brianna was an abused child. After an investigation, HCCS again removed Brianna, Rabecka, and Dorothy, as well as Andrea Johnson, who was born in May 2002. After Appellant and David voluntarily admitted to the abuse of Brianna and the dependency of Rabecka, Dorothy, and Andrea, the trial court adjudicated each child accordingly. HCCS placed the children in foster care and, on October 14, 2003, filed a motion for permanent custody under R.C. 2151.413(B).
 {¶ 4} At the permanent custody hearing, Dr. Charles Ray, a psychologist, testified for HCCS. Dr. Ray performed three psychological evaluations on Appellant for the agency and later acted as her personal counselor. The evaluations occurred on September 14, 2000; December 15, 2000; and July 3, 2003. In the first evaluation, Dr. Ray diagnosed Appellant with adjustment disorder with depression based on life circumstances and paranoid personality disorder based on her "pervasive distrust of others."
 {¶ 5} Dr. Ray reevaluated Appellant in December 2000. In this evaluation, Dr. Ray conducted a parent-child relationship inventory and concluded that Appellant's responses were "similar to parents who view parenting responsibilities as a burden and who view themselves as being overburdened by the responsibilities and as leading stressful lives." The inventory also indicated that Appellant felt "helpless in her interactions with her children, [had] problems talking with her children at their level and * * * difficulties accepting the children's age appropriate independence and some over-protectiveness." Dr. Ray's diagnosis of adjustment disorder with depression and paranoid personality disorder remained the same and he noted that the "basic issues that made [Appellant] incapable of parenting had not substantially changed * * *."
 {¶ 6} In July 2003, Dr. Ray again evaluated Appellant on a referral from HCCS. Dr. Ray changed appellant's diagnosis to unspecified depressive disorder and social phobia, but stated that she sill exhibited symptoms of paranoid personality disorder. He concluded that Appellant lacked necessary parenting skills, but recommended supervised visitation with her children. Dr. Ray testified that his recommendation for supervised visitation was in Appellant's best interest and not necessarily in the children's best interest.
 {¶ 7} Dr. Ray began acting as Appellant's personal counselor in August 2003. On direct examination, he refused to give a recommendation based on this counseling because it did not occur on referral from HCCS and was protected by doctor-patient confidentiality. Dr. Ray did note that out of six scheduled individual counseling sessions, Appellant only attended three and that Appellant admitted to him that she (1) bit and kicked Brianna; (2) wiped urine soaked panties in Brianna's face; and (3) threatened to kill or hit the children.
 {¶ 8} Beverly Edwards, a case aid for HCCS, testified that she supervised Appellant's visits with her children both when they were initially removed in 2000 and under the current order. She stated that Appellant exhibited poor observation skills when it came to caring for the children.
 {¶ 9} Naomi Colvin, the children's foster mother, testified to Rabecka, Andrea, and Dorothy's physical conditions when they arrived at her home in October 2002. Andrea's hair "was so dirty, you couldn't tell what color it was. It was completely matted to the back of her head. She had sores under both armpits where the dirt had laid in there * * * had open sores under both arms." Dorothy's diaper was taped to her body and required medical scissors to remove it. When Colvin removed the diaper it "weighed five pounds." Dorothy's "clothes were filthy. Her hair was filthy. Her legs were so thin that her knees stuck out." She also suffered from an untreated infection on her bottom lip. Finally, Rabecka "had her fingernails chewed down to the blood. She was very nervous." Colvin testified that Rabecka is now benefiting from anger management counseling and has learned to verbalize her feelings. However, these behavior changes lapse after visits with Appellant, during which Rabecka has bitten and cursed at her stepsister, Brianna.
 {¶ 10} Appellant testified that she loves her children and is now able to properly care for them. She stated that her new marriage provides a stable life with a solid support system. Kenneth Simmerly, Appellant's new husband, testified that Appellant's anger has significantly decreased and that he believes she can be a competent and loving mother.
 {¶ 11} The trial court granted permanent custody to HCCS. In its judgment entry, the trial court found that neither Appellant nor David could, or should, be reunited with the children within a reasonable time and that permanent custody is in the children's best interest.
 {¶ 12} Appellant appeals the trial court's judgment and raises the following assignment of error: "The trial court erred in ordering permanent custody of Rabecka Johnson, Dorothy Johnson, and Andrea Johnson to the Hocking County Children's Services Board as such was against the manifest weight of the evidence."
 {¶ 13} In her sole assignment of error, Appellant argues that the trial court's judgment is against the manifest weight of the evidence because she met the goals of her case plan. Within this assignment of error, Appellant also argues that she received ineffective assistance of counsel because her trial counsel failed to call an expert witness to testify to her mental health.
 {¶ 14} An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Estate of Haynes
(1986), 25 Ohio St.3d 101, 103-104.
 {¶ 15} In reviewing whether clear and convincing evidence supports a trial court's decision, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." State v. Schiebel (1990),50 Ohio St.3d 71, 74. If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court must affirm the judgment and not substitute its judgment for that of the trial court. Id. The credibility of witnesses and weight of the evidence are issues primarily for the trier of fact.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 16} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. Santosky v. Kramer (1982),455 U.S. 745, 753; In re Murray (1990), 52 Ohio St.3d 155, 156. The parent's rights, however, are not absolute. Rather, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" In re Cunningham (1979), 59 Ohio St.2d 100, 106, quoting,In re R.J.C. (Fla.App. 1974), 300 So.2d 54, 58. Thus, the state may seek to terminate parental rights when the child's best interests demands such termination because of parental unsuitability.
 {¶ 17} While neither party has raised the issue in this case, it is not clear what statutory provision the trial court used to grant permanent custody to HCCS. The motion for permanent custody cited R.C.2151.413(B), which allows a public children services agency to file for permanent custody when that agency has temporary custody of an orphaned
child and "no relative of the child is able to take legal custody * * *." However, it is clear that the children are not orphaned. Nonetheless, R.C. 2151.413(A) authorizes an agency with temporary custody to seek permanent custody over a child who is not orphaned or abandoned.
 {¶ 18} R.C. 2151.414(B)(1) provides that a trial court "may grant permanent custody of a child to a movant if the court determines * * * by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency * * * and that any of the following apply: (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. (b) The child is abandoned. (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody. (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period. * * *." (Emphasis added.) Only R.C.2151.414(B)(1)(a) fits the facts of this case. The children are not orphaned or abandoned and have not been in the temporary custody of HCCS for twelve or more months of a consecutive twenty-two month period.[2]
 {¶ 19} Civ.R. 15(B) provides that "[W]hen issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues." Here, the parties were clearly aware that the children were not orphaned and proceeded as though HCCS sought custody pursuant to R.C.2151.414(B)(1)(a). Therefore, under Civ.R. 15(B), the trial court's findings relating to R.C. 2151.414(B)(1)(a) are proper despite the improper statutory citation in the agency's motion.
 {¶ 20} R.C. 2151.414(B)(1)(a) requires the trial court to find that granting permanent custody to HCCS is in the best interest of the children and that the children cannot, or should not, be reunited with either parent within a reasonable time. The trial court determined that Appellant and Mr. Johnson could not, or should not, be reunited with the children within a reasonable time because "[a]ll psychological reports determine the progress to be guarded for both parents, and even if the children could be returned to either of the parents the return would be only possible under the most structure[d] of conditions [with] frequent and consistent monitoring. Further, the history of both parents [shows] the problems have been continuous and episodic over the past three immediate years. [The court finds] [t]his history * * * to be most compelling [and] that reunification on a permanent basis will not be possible. The Court, therefore, finds by clear and convincing evidence, [that] the minor children cannot be returned to the parents in a reasonable time." Regarding Appellant, the trial court found that her "mental health issues are directly related to her ability to parent and will not likely be improved or progress made in the immediate future."
 {¶ 21} Some competent, credible evidence supports these findings. According to the psychological evaluations, Appellant suffered from impulsive anger and deficient parenting skills. These problems were documented upon Appellant's first referral to Dr. Ray in 2000 and continue through the present case, as evidenced by the 2003 evaluation and her failed reunification with her children. Appellant benefited from counseling services and did complete her case plan in the 2000 case. However, her subsequent actions support the trial court's conclusion that Appellant is not rehabilitated and cannot consistently care for her children in an appropriate manner. Despite counseling, she again abused her stepdaughter, which led to HCCS regaining temporary custody of all four children. Appellant argues that she is now able to love and care for her children because she is in a better marriage with a solid support system, but testimony at trial showed otherwise and the trial court was free to rely on that testimony.
 {¶ 22} The trial court also found that granting permanent custody to HCCS was in the best interest of the children. Specifically, the trial court found that: (1) the children have been in and out of foster care for the past three years and have been in the custody of HCCS for twelve months out of a consecutive twenty-two month period; (2) the children need a legally secure permanent placement, which cannot be achieved without a grant of permanent custody; and (3) Rabecka, Dorothy, and Andrea have bonded, and share a relationship, with their stepsister, Brianna, and that separating them from Brianna is not in their best interest.
 {¶ 23} The record supports the finding that the children have been in and out of foster care for an extended period of time. HCCS originally obtained custody of Rabecka and Dorothy in June 2000. HCCS reunified Rabecka and Dorothy with Joann in June 2001. Protective supervision ceased in July 2002. Just three months later, HCCS again received temporary custody of Rabecka and Dorothy, along with their sister Andrea. The children have remained in the temporary custody of HCCS since October 2002. HCCS filed the motion for permanent custody twelve months later, on October 14, 2003. While the children have not been in the custody of HCCS for twelve months out of a consecutive twentytwo month period under the calculation required in R.C. 2151.414(B)(1)(d), their custodial history is extensive and some competent, credible evidence supports the trial court's finding regarding the long history of out of home placement.
 {¶ 24} Some competent, credible evidence also supports the trial court's second finding that the children are in need of a legally secure permanent placement, which cannot be achieved without a grant of permanent custody. The trial court made this finding under R.C. 2151.414(D)(4). Naomi Colvin, the children's foster mother, testified to the physical and emotional condition of the children when they were placed with her in October 2002 and to their improvement while living with her. Colvin testified that the children were filthy and that Andrea and Dorothy had injuries, such as open sores and infected cuts. She also testified that the children are reluctant to visit with their mother and cry when dropped off for the visits. Moreover, Rabecka is now in counseling for anger management and has shown improvements in her behavior. However, these improvements lapse after visitations with her mother. Dr. Ray's testimony and psychological evaluations support the trial court's conclusion that Appellant is likely to relapse and unlikely to be able to competently and effectively parent these children given their behavioral needs.
 {¶ 25} Finally, the trial court found that it is not in the children's best interest to be split apart from their stepsister, Brianna. However, HCCS introduced no evidence regarding Rabecka, Dorothy, and Andrea's relationship with Brianna. Nonetheless, because some competent, credible evidence supports the trial court's findings under R.C. 2151.414(D)(3)-(4), we will not reverse on this basis alone.
 {¶ 26} Appellant also argues that she was denied effective assistance of counsel when her lawyer failed to obtain an expert witness to rebut Dr. Ray's testimony. The right to counsel guaranteed in these proceedings by R.C. 2151.352 and by Juv.R. 4, includes the right to the effective assistance of counsel. In re Heston (1998), 129 Ohio App.3d 825, 827. The ineffective assistance of counsel test used in criminal cases is applicable to actions seeking to terminate parental rights. Id. See, also, In re Brodbeck (1994), 97 Ohio App.3d 652, 657; Jones v. LucasCty. Children Serv. Bd. (1988), 46 Ohio App.3d 85, 86.
 {¶ 27} The test for a claim of ineffective assistance of counsel is two-part. State v. Ballew (1996), 76 Ohio St.3d 244, 255. First, counsel's performance must be deficient. Id. Second, the deficient performance must have prejudiced the result. Id. To prevail, Appellant must prove that her counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for her counsel's unprofessional error, the result of the proceeding would have been different. Id. at 256-257.
 {¶ 28} Appellant's argument that her counsel provided ineffective assistance fails under the second prong of the test. In order to find prejudice, we would have to presume that another expert would have testified favorably on the appellant's behalf. Such an assumption would amount to pure speculation and cannot be justified on the record before us. Therefore, Appellant's argument that she received ineffective assistance of counsel is without merit.
 {¶ 29} Appellant's sole assignment of error is overruled and the trial court's judgment is affirmed.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. Kline, J.: Concur in Judgment and Opinion.
[1] Mrs. Simmerly was formerly known as Joann Johnson when she gave birth to her children. After divorcing David Johnson, she remarried during the pendency of these proceedings and assumed the surname "Simmerly." While her counsel spells it "Simerly," the judgment from which she appeals spells it "Simmerly."
[2] R.C. 2151.414(B)(1)(d) states: * * * "For purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home." Here, HCCS removed the children from the home on October 29, 2002 and the trial court adjudicated them as dependent on December 19, 2002. Thus, the earlier date is the date of adjudication. When HCCS filed for permanent custody on October 14, 2003, only ten months had elapsed from the date that the children entered into temporary custody. As the Supreme Court held in In re CW 2004-Ohio-6411, a child must be in temporary custody of the agency for at least twelve months before the motion is filed to proceed under R.C. 2151.414(B)(1)(d).