OPINION *Page 2 
{¶ 1} Appellant-mother Eva Hackman appeals the decision of the Guernsey County Court of Common Pleas, Juvenile Division, which granted permanent custody of her child, Stephanie S. to Appellee Guernsey County Children Services Board. ("GCCSB").
 I. Procedural History {¶ 2} On February 2, 2007, Stephanie S. the minor child of appellant-mother was born. On February 5, 2007, the GCCSB was granted ex parte custody of Stephanie S. The child was removed from appellant-mother's custody at birth due to the appellant-mother's inability to successfully complete any of her case plan concerning her four older children, the fact that she was homeless and was prostituting herself in Muskingum County when she could be located.
 {¶ 3} Adjudicatory and Dispositional hearings were held on April 30, 2007. The child was found by the Court to be a dependent child, and temporary custody was granted to the GCCSB. The case plan filed by GCCSB with the Court was approved and made an order of the Court.
 {¶ 4} The requirements of the case plan were that appellant would: (1) Complete inpatient drug and alcohol assessment and comply with treatment until treatment is deemed no longer necessary by the service provider; (2) Maintain sobriety and attend and complete Drug and Alcohol counseling following inpatient drug and alcohol treatment; (3) Take medication as prescribed; (4) Comply with random drug screens; (5) Schedule a mental health assessment and comply with recommendations; (6) Get on the HUD list and obtain and maintain safe and stable housing; (7) Cooperate with *Page 3 
Guernsey County Child Support Enforcement Agency to establish paternity of Stephanie; and (8) Attend visitations.
 {¶ 5} On February 6, 2008, the GCCSB filed for permanent custody of the minor child.
 {¶ 6} Appellant had been making some progress in her case plan, was having supervised, and subsequently monitored visitation in her apartment for up to eight hours per day. However, on October 29, 2007 parenting time with appellant-mother was denied due to concerns that she was acting drowsy and incoherent. Appellant's ongoing caseworker, Sylvia Lawson, testified that appellant admitted to her that she misused her medications on that day causing her to pass out while cooking dinner. Cambridge Police Officer Dave Peoples testified to that incident, and stated that he was dispatched to appellant's home due to a fire alarm going off, that he could hear the fire alarm from the street, and that they had to go in through an upstairs window to respond. He further testified that it took them several minutes to wake appellant up. Officer Peoples testified that the situation would have been a safety issue to Stephanie if she had been present as originally planned.
 {¶ 7} Caseworker Lawson testified that appellant had recently lost four other children to the custody of Guernsey County Children Services. The caseworker testified that appellant did not have safe and stable housing in which to take her child, as she had lived in seven different residences in fifteen months, and was currently living with her husband whom she reported to the caseworker was an alcoholic and drug addict, and filed divorce papers repeating the same information. *Page 4 
 {¶ 8} Appellant and her husband met at CVS pharmacy and married two weeks later. Appellant filed for divorce less than two months later, but continued to reside with her husband at the time of the hearing. Caseworker Lawson testified that appellant failed to cooperate with her when the caseworker attempted to conduct home visits at the residence. The caseworker testified that appellant did cooperate with the Child Support Enforcement Agency giving names of possible fathers of Stephanie. Six different men were tested, but none was found to be the father.
 {¶ 9} The caseworker was provided a release by appellant to CVS pharmacy, which showed that appellant had received Hydrocodone, an opiate, from five different doctors from August 31, 2007 until November 5, 2007. Further, the caseworker testified that appellant was going to the Emergency Room on almost a monthly basis for different concerns, and requesting Hydrocodone during those visits.
 {¶ 10} Appellant admitted to these allegations in her testimony, but stated that the doctors knew she was getting prescriptions from other doctors, and further, she also made her drug and alcohol counselor aware. However, testimony from the doctor's office showed that appellant was released from their care due to a report from Children Services that appellant was receiving prescriptions from different doctors, and that the office was unaware until that time that she was receiving pain medication from any other doctor. Further, her drug and alcohol counselor testified that if she had known of the trips to the emergency room and other doctors for medications, appellant probably would not have been discharged from drug and alcohol treatment.
 {¶ 11} Caseworker Lawson also testified that appellant was to have random drug screens, as part of her case plan, and that she was not compliant. The caseworker *Page 5 
testified that the last time she was able to request a drug screen was October 30, 2007, and that appellant manipulated that test so that no results were available. Since that time, appellant has been non-cooperative with her caseworker, and her caseworker has been unable to request another test.
 {¶ 12} Appellant has two prior convictions for child endangering in the Cambridge Municipal Court. During the pendency of this case, GCCSB was granted permanent custody of mother's four older children.
 {¶ 13} Although the mother has had the same residence since August 27, 2007, she has stated that she planned to move two counties away if she regained custody of Stephanie.
 {¶ 14} On June 10, 2008, the court filed its Judgment Entry terminating appellant-mother's parental rights, and granting permanent custody of the minor children to GCCSB.
 II. Assignment of Error {¶ 15} On appeal, mother asserts the following assignment of error:
 {¶ 16} "I. THE JUDGMENT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT GUERNSEY COUNTY CHILDREN SERVICES BOARD FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT THE APPELLANT'S PARENTAL RIGHTS SHOULD BE TERMINATED."
 A. Burden Of Proof {¶ 17} "[T]he right to raise a child is an `essential' and `basic' civil right." In re Murray (1990), 52 Ohio St.3d 155, 157,556 N.E.2d 1169, quoting Stanley v. Illinois (1972), 405 U.S. 645, 92 S.Ct. 1208,31 L.Ed.2d 551. A parent's interest in the care, *Page 6 
custody and management of his or her child is "fundamental." Id.;Santosky v. Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388,71 L.Ed. 2d 599. The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." In re Smith (1991), 77 Ohio App. 3d 1, 16,601 N.E. 2d 45. Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.
 {¶ 18} An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B) (1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Estate ofHaynes (1986), 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23.
 B. Standard of Review {¶ 19} Even under the clear and convincing standard, our review is deferential. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. In re Myers III, Athens App. No. 03CA23,2004-Ohio-657, ¶ 7, citing State v. Schiebel (1990), 55 Ohio St.3d 71,74, 564 N.E.2d 54. The credibility of witnesses and weight of the evidence are issues primarily for the trial court, as the trier of fact.In re Ohler, Hocking App. No. 04CA8, 2005-Ohio-1583, ¶ 15, *Page 7 
citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 II. Requirements for Permanent Custody Awards {¶ 20} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court must schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 21} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned and the parents cannot be located; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 22} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in *Page 8 
R.C. 2151.414(B) (1) (a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 23} A. Parental Placement within a Reasonable Time-R.C. 2151.414(B) (1) (a) and the Best Interest of the Children.
 {¶ 24} In her sole assignment of error, the appellant-mother argues that the trial court abused its discretion by finding that the child should not or could not be placed with her within a reasonable period and that the grant of permanent custody to GCCSB was in the child's best interest. We disagree.
 {¶ 25} The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E) (1) — (15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See In re: William S.,75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738; In re: Hurlow (Sept. 21, 1998), Gallia App. No. 98 CA 6, 1997 WL 701328; In re: Butcher (Apr. 10, 1991), Athens App. No. 1470, 1991 WL 62145.
 {¶ 26} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows: *Page 9 
 {¶ 27} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 28} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 29} "* * *
 {¶ 30} "(16) Any other factor the court considers relevant."
 {¶ 31} R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the *Page 10 
interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E) (7) to (11) apply.
 {¶ 32} As detailed in Part I, supra, the evidence demonstrated the successful efforts appellant-mother had made in the case to regain custody of Stephanie. On that point, the evidence demonstrates that any improvement the appellant-mother has made in her life is tentative and, perhaps, temporary, and that she has relapsed. The trial court found that, regardless of appellant's compliance with aspects her case plan, she was still not able to be a successful parent to this child. The trial court further found that appellant has been found guilty of child endangering in the past [R.C. 2151.414(E) (6)]; that appellant-mother has placed the child at risk of harm two or more times due to appellant-mother's drug usage [R.C. 2151.414(E) (9)] and that appellant-mother has had her parental rights terminated with respect to the four older children [R.C. 2151.414(E) (11)].
 {¶ 33} In the case of In re: Summerfield, Stark App. No. 2005CA00139,2005-Ohio-5523, this court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.
 {¶ 34} Based upon the foregoing, we determine upon a thorough review of the record that clear and convincing evidence supports the juvenile court's finding that the child could not or should not be returned to the appellant-mother within a reasonable *Page 11 
time. Despite offering numerous services, the appellant-mother was unable to mitigate the concerns that led to the child's removal.
 {¶ 35} The trial court made findings of fact regarding the child's best interest. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In reMauzy Children (Nov. 13, 2000), Stark App. No. 2000CA00244, quotingIn re Awkal (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424.
 {¶ 36} The trial court found, "[t]he child has been in the same foster home since she was two days old. The child has adjusted well to the foster family and is a part of the family. The child has bonded well with the foster mother and the foster mother's five year old daughter. During the past few parental visits the child did not want the foster mother to leave and was mad at the foster mother when she returned to pick her up. The child would sleep through most of the visits with her mother . . . The child needs a legally secure permanent placement and that permanency cannot be achieved without a grant of permanent custody to the Agency. The mother was progressing in her reunification with the child and then at her request started regressing in her re-unification."
 {¶ 37} We determine upon a thorough review of the record that clear and convincing evidence supports the juvenile court's finding that the best interest of the child would be served by the grant of permanent custody to GCCSB.
 {¶ 38} For these reasons, we find that the trial court's determination that appellant-mother had failed to reduce the risk to the child and therefore the child could *Page 12 
not be placed with her within a reasonable time or should not be placed with her, was not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to GCCSB was in the child's best interest was not against the manifest weight or sufficiency of the evidence.
 {¶ 39} Appellant's sole assignment of error is overruled.
 {¶ 40} The judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is affirmed.
 Gwin, P.J., Edwards, J., and Delaney, J., concur. *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is affirmed. Costs to appellant. *Page 1