[Cite as *LaFrance v. Ralich*, 2023-Ohio-4291.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
HARRISON COUNTY

MARIE LaFRANCE, AS ADMINISTRATOR OF THE ESTATE OF
MARTHA YANKUS,

Plaintiff-Appellant,

v.

STEVEN RALICH,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 HA 0003**

---

Civil Appeal from the
Court of Common Pleas of Harrison County, Ohio
Case No. CVH-2020-0063

**BEFORE:**
David A. D'Apolito, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Nicholas R. Oleski,* McCarthy, Lebit, Crystal & Liffman Co., LPA, for Plaintiff-Appellant and

*Atty. Robert A. Hager, Atty. Justin M. Alaburda* and *Atty. Hilary F. DeSaussure*, Brennan, Manna & Diamond, LLC, for Defendant-Appellee.

Dated: November 28, 2023

**D'APOLITO, P.J.**

{¶1} Appellant, Marie LaFrance, as Administrator of the Estate of Martha Yankus ("Marie"), appeals from the January 18, 2023 judgment of the Harrison County Court of Common Pleas granting declaratory judgment on Appellee's, Steven Ralich ("Steven"), counterclaim and dismissing Marie's complaint following a bench trial. On appeal, Marie asserts the trial court erred in granting judgment to Steven because the mortgage at issue is barred by the statute of limitations, fails for want of consideration, and fails due to fraud. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2} This case involves four parcels of land in Harrison County, Ohio consisting of approximately 57 acres.[1] The property was purchased in 2004 by John Yankus ("John"). The property is encumbered by a promissory note secured by a mortgage between John (as borrower/mortgagor) and Steven (as holder/mortgagee). (Exhibit 1, Promissory Note); (Exhibit 2, Mortgage). The promissory note and mortgage were executed on May 6, 2013 in the amount of $200,000 and the term of the note had a definite payment due date of November 6, 2013. (*Id.*)

{¶3} John died intestate in 2015 and the property passed by statute to his parents, Peter and Martha Yankus. Peter Yankus died intestate in 2018 and his share of the property passed by statute to his wife, Martha Yankus ("Martha").

{¶4} On August 5, 2020, Martha filed a complaint against Steven to quiet title and for declaratory judgment, seeking to invalidate Steven's mortgage and interest in the property. On September 28, 2020, Steven filed an answer and counterclaim seeking declaratory judgment that his mortgage is valid and enforceable and that he has a valid interest in the property.[2] Martha, through her attorney-in-fact, filed a reply.

{¶5} On August 18, 2020, Martha passed away. Martha's daughter and also the administrator of her estate, Marie, was substituted as the plaintiff.

---

[1] The property is identified as Harrison County Permanent Parcel Nos. 02-0000222.019, 02-0000222.20, 02-0000160.006, and 02-0000222.021.

[2] Steven had not previously moved to enforce the note or foreclose on the mortgage.

**{¶6}** On December 28, 2020, Marie filed a Civ.R. 12(C) motion for judgment on the pleadings. Marie argued that Steven's ability to foreclose on the mortgage was barred by the statute of limitations. On January 5, 2021, Steven filed a brief in opposition. Steven asserted his mortgage is valid and its enforcement is not time-barred because an action on a promissory note to collect a mortgage debt is separate and distinct from an action in equity to enforce a mortgage lien on a property. On January 13, 2021, Marie filed a reply in support. Steven filed a sur-reply on February 22, 2021.

**{¶7}** On June 7, 2021, the trial court denied Marie's motion for judgment on the pleadings. The court found "the material factual issues exists (sic), particularly, whether equitable foreclosure and ejectment actions were subject to a six year statute of limitation[s]." (6/7/2021 Judgment Entry).

**{¶8}** A bench trial was held on January 4, 2023.

**{¶9}** Marie is a marketing manager for Steris Corporation. (1/4/2023 Bench Trial Tr., p. 11-12). She is married to Carl and they have three children. (*Id.* at p. 12). John was Marie's only sibling. (*Id.* at p. 12-13). They had a "normal" brother/sister relationship. (*Id.* at p. 13). Marie testified that John "liked to party" and "flunked out" of Case Western Reserve University. (*Id.*) John ended up graduating from the University of Akron in the late 1980s. (*Id.* at p. 14). John did not maintain steady employment throughout his adult life. (*Id.*)

**{¶10}** John divorced his wife in 2003. (*Id.* at p. 15). John used his settlement money from the marital home, around $77,000, to purchase two of the four parcels of land at issue. (*Id.*) John and Marie's parents purchased the other two parcels for John in the amount of $8,000. (*Id.* at p. 16). Their parents also paid a large portion of John's living expenses "on multiple occasions with significant amount of money." (*Id.* at p. 24).

**{¶11}** As stated, John passed away in 2015. Marie was appointed as administrator of his estate. (*Id.* at p. 17); (Exhibit 17). At the time of his death, John had more liabilities than assets. (1/4/2023 Bench Trial Tr., p. 17). Marie was also appointed as administrator of their father's and mother's estates after their deaths. (*Id.* at p. 26). One of the assets in their mother's estate is the property in Harrison County. (*Id.* at p. 27).

**{¶12}** Marie first learned that John had given a mortgage on this property when he was in the hospital in late April 2013. (*Id.* at p. 29). He required immediate surgery for a heart condition. (*Id.* at p. 30). The open-heart surgery was performed at Cleveland Clinic on May 8, 2013. (*Id.*) John had no health insurance and had been withdrawing from his 401k to pay his bills. (*Id.* at p. 31). His Cleveland Clinic bill was approximately $241,000. (*Id.* at p. 32).

**{¶13}** Two days before his surgery, May 6, 2013, John signed a promissory note for $200,000 payable to Steven for the Harrison County property. (*Id.* at p. 33). Marie testified Steven never filed a lawsuit against John, never filed a foreclosure action against the property, never presented a claim against John's estate, and never presented claims against either of their parents' estates. (*Id.*)

**{¶14}** Steven testified on cross-examination that he and John were lifelong best friends. (*Id.* at p. 51). Steven works at his family's multi-million dollar truck sales business in Akron, Ohio. (*Id.* at p. 60-61). Steven and John attended the University of Akron together. (*Id.* at p. 61). Unlike Steven, John's employment and finances "kind of went on a roller coaster." (*Id.* at p. 63). Steven did not loan John money to purchase the Harrison County property back in 2004. (*Id.* at p. 63-64). Steven used the property with John to do recreational activities like hunting and fishing. (*Id.* at p. 64). Over the years, Steven was "happy to provide John with cash and other benefits" to help out his best friend. (*Id.* at p. 70).[3]

**{¶15}** Steven presented and executed the note and mortgage to John at the hospital before John's open-heart surgery. (*Id.* at p. 52). The documents were drafted by Steven's attorney. (*Id.*) The note is dated May 6, 2013 for the principal sum of $200,000, payable to Steven, with an interest rate of four percent. (*Id.* at p. 53). The mortgage secures the promissory note. (*Id.* at p. 54). Steven did not give John $200,000 in cash. (*Id.*) Rather, Steven said the promissory note reflects debts John owed him "over an extended period of time," i.e., going back "20, 30 years ago[.]" (*Id.* at p. 55).

---

[3] The "cash and other benefits" that Steven furnished or paid for include: "lumber, shingles, hardware, propane lighting fixtures, gutters, spouting, limestone, doors, windows, cash for monthly household and living expenses, vehicle repairs, equipment purchases and maintenance, property tax payments, paint, a gas stove, and diesel fuel." (7/14/2023 Appellee's Brief, p. 1). Steven also paid to double the size of the cabin located on the property. (*Id.* at p. 4); (1/4/2023 Bench Trial Tr., p. 110).

**{¶16}** John never made any payments under the promissory note. (*Id.* at p. 56). Steven testified he never filed a lawsuit against John, never filed a foreclosure suit against the property, never sued John's estate after his death, and never sued either of John's parents' estates after their deaths. (*Id.* at p. 56-57). Steven claims he is owed $200,000 plus interest. (*Id.* at p. 58).

**{¶17}** Marie's daughter, Elaine Costanzo ("Elaine"), is a nurse anesthetist at VA Medical Center in Cleveland. (*Id* at p. 82). Between February 2012 to January 2014, Elaine worked at Cleveland Clinic. (*Id.* at p. 83). John was Elaine's uncle and godfather. (*Id.*) They had a close relationship and shared fond memories. (*Id.*) John was first admitted to Southwest General Hospital at the end of April 2013. (*Id.* at p. 84). Elaine arranged for John to be transferred to Cleveland Clinic after finding out he needed open-heart surgery. (*Id.* at p. 86).

**{¶18}** Elaine saw John daily during his hospital stay. (*Id.* at p. 87). John was anxious and expressed concern regarding his ability to pay for the surgery since he had no health insurance. (*Id.* at p. 87-88). Elaine said John told her "that he had come up with a plan to make sure that the Cleveland Clinic couldn't come after what [he] learned to be his only and greatest asset which was the land in Harrison County." (*Id.* at p. 88). Prior to his surgery, Elaine stated John told her "that he was going to place a fake lien on the property that he had for some amount that he decided that the surgery may be worth and that that way that would protect the land from the Cleveland Clinic coming after it to pay for any of his hospital bills." (*Id.* at p. 89). Elaine felt "very uncomfortable" after learning that information. (*Id.*) Elaine expressed to John that a better option would have been to keep things "in our family" instead of involving Steven. (*Id.* at p. 90). Elaine said John "brushed [her] off" and stated, "'Don't worry about it. It's just temporary. They were already up here earlier today, we signed all the paperwork. It's okay. It'll be taken care of. Don't worry about it.'" (*Id.*)

**{¶19}** Following Marie's case-in-chief, Steven's counsel moved to dismiss pursuant to Civ.R. 41(B)(2), which was overruled by the trial court. (*Id.* at p. 95, 99).

**{¶20}** Steven testified on direct examination that his impression of John's relationship with his sister, Marie, was "kind of strained." (*Id.* at p. 104). During John's difficult financial times over the years, John would borrow money from Steven, "certainly

hundreds of thousands of dollars; at least $200,000." (*Id.* at p. 105-106). Steven described the Harrison County property as "mostly undeveloped land." (*Id.* at p. 107). Steven said he did not give John the money to buy the property. (*Id.* at p. 109).

**{¶21}** Regarding the later promissory note and mortgage, Steven said he is the mortgagee and John is the mortgagor. (*Id.* at p. 111). The mortgage was notarized by Daniel Ralich ("Daniel"), Steven's brother, and recorded with the Harrison County Recorder's Office. (*Id.*); (Exhibit 2). John is the borrower of the promissory note and Steven is the holder. (1/4/2023 Bench Trial Tr., p. 112); (Exhibit 1). Steven and Daniel were present when John signed the documents in his hospital room on May 6, 2013. (1/4/2023 Bench Trial Tr., p. 113). Due to John's serious health issues, Steven said John "wanted to deed this property over to [Steven] in order to make sure that [Steven] got paid back." (*Id.*) "[John] came up with the number of $200,000 which [Steven] was agreeable to and [Steven] had the mortgage documents prepared and [John] signed them." (*Id.* at p. 114).

**{¶22}** Steven's brother, Daniel, testified he knew John and his family for years. (*Id.* at p. 124-125). Daniel testified he notarized the mortgage and was present with Steven when John signed the documents in his hospital room on May 6, 2013. (*Id.* at p. 125-126); (Exhibit 2).

**{¶23}** On January 18, 2023, the trial court granted judgment on Steven's counterclaim and dismissed Marie's complaint. The court awarded Steven declaratory judgment that the mortgage is valid. Specifically, the court held: (1) "[Steven] Ralich would be time barred on the note but may still seek remedy on a valid mortgage by ejectment 21-year statute of limitations or foreclosure 15-year statute of limitations"; (2) "the mortgage is supported by consideration"; and (3) "there is insufficient evidence to establish fraud on the note and mortgage." (1/18/2023 Judgment Entry, p. 3-4).

**{¶24}** Marie filed a timely appeal and raises one assignment of error.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED IN GRANTING JUDGMENT TO [STEVEN] RALICH.**

Case No. 23 HA 0003

**{¶25}** In her sole assignment of error, Marie argues the trial court erred in granting judgment to Steven and not granting her, the current titleholder of the property, a declaratory judgment to declare Steven's mortgage invalid. Marie raises three issues: (1) "Is the Mortgage barred by the statute of limitations?"; (2) "Did the Mortgage fail for want of consideration?"; and (3) "Did the Mortgage fail due to fraud?" (6/27/2023 Appellant's Brief, p. 6).

> When reviewing civil appeals from bench trials, an appellate court applies a manifest weight standard of review. *Revilo Tyluka, L.L.C. v. Simon Roofing & Sheet Metal Corp.*, 193 Ohio App.3d 535, 2011-Ohio-1922, 952 N.E.2d 1181 (8th Dist.), citing App.R. 12(C), *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Judgments supported by some competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus (1978). See, also, *Gerijo, Inc. v. Fairfield*, 70 Ohio St.3d 223, 226, 638 N.E.2d 533 (1994). Reviewing courts must oblige every reasonable presumption in favor of the lower court's judgment and finding of facts. *Gerijo*, 70 Ohio St.3d at 226, 638 N.E.2d 533 (citing *Seasons Coal Co.*, supra). If the evidence is susceptible to more than one interpretation, then we must construe it consistently with the lower court's judgment. *Id.* In addition, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. *Kalain v. Smith*, 25 Ohio St.3d 157, 162, 495 N.E.2d 572 (1986).

*Bova v. B & J Pools, Inc.*, 7th Dist. Mahoning No. 22 MA 0033, 2023-Ohio-1680, ¶ 36.

**{¶26}** First, Marie contends that because the trial court found the promissory note to be time barred, it should have also found Steven's mortgage to be time barred as well. Marie argues the six-year statute of limitations in R.C. 1303.16(A), which governs actions on a promissory note, also controls actions to enforce a mortgage. Marie stresses the note was payable on or before November 6, 2013. (Exhibit 1). Thus, because no action

was brought before November 2019, Marie claims both the note and mortgage are time barred.

**{¶27}** In support of her position that the statute of limitations for enforcing a note and mortgage are one in the same, Marie mainly relies on a Supreme Court of Ohio case from nearly 130 years ago as well as two federal cases: *Kerr v. Lydecker*, 51 Ohio St. 240 (1894) (abrogation recognized by *Bank of New York Mellon v. Walker*, 8th Dist. Cuyahoga No. 104430, 2017-Ohio-535); *In re Fisher*, 584 B.R. 185 (Bankr. N.D. Ohio 2018) (declined to follow by *U.S. Bank Natl. Assoc. v. O'Malley*, 8th Dist. Cuyahoga No. 108191, 2019-Ohio-5340); *Baker v. Nationstar Mtge. LLC*, No. 2:15-cv-2917, 2018 WL 3496383 (S.D. Ohio 2018) (vacated by *Baker v. Nationstar Mtge. LLC*, No. 2:15-cv-2917, 2018 WL 6981208 (S.D. Ohio 2018).

**{¶28}** Contrary to Marie's position, this court in *Rutana v. Koulianos*, 7th Dist. Mahoning Nos. 19 MA 0087 and 19 MA 0120, 2020-Ohio-6848, including the trial court below, has found *Deutsche Bank Natl. Trust Co. v. Holden*, 147 Ohio St.3d 85, 2016-Ohio-4603, and *Walker, supra,* applicable for the proposition that mortgages are separate and distinct from promissory notes and a mortgage may still be enforced where the underlying promissory note is time barred.[4]

> In *Holden*, 147 Ohio St.3d 85, 60 N.E.3d 1243, the Ohio Supreme Court held that, "(w)e have long recognized that an action for a personal judgment on a promissory note and an action to enforce mortgage covenants are 'separate and distinct' remedies." *Id.* at ¶ 25, citing and quoting *Carr v. Home Owners Loan Corp.*, 148 Ohio St. 533, 540, 76 N.E.2d 389 (1947) and accord *Giddings v. Barney*, 31 Ohio St. 80, 82 (1876).
>
> * * *
>
> In *Walker*, 2017-Ohio-535, 78 N.E.3d 930, the Eighth District Court of Appeals applied *Holden* beyond a bankruptcy context. That court cited to the Ohio Supreme Court's holding in *Holden* that an action of a promissory

---

[4] "Ohio courts have extended the *Holden* reasoning by applying it to statute of limitations questions." *Hanover v. Real Time Resolutions, Inc.*, Case No. 3:22-cv-209, 2023 WL 5585905, *7 (S.D. Ohio 2023).

note and an action on the mortgage that secures the note are separate actions and have distinct remedies to collect on a debt. *Id.* at ¶ 20. Applying *Holden*, the *Walker* Court held that the bank could still enforce obligations such as foreclosure or ejectment stemming from the mortgage against Walker even though the statute of limitations barred the bank from obtaining a judgment on the promissory note that he executed that was secured by a mortgage on the property. *Id.*

*Rutana, supra,* at ¶ 40-41.

**{¶29}** *Holden* applies here because Steven seeks to enforce his interest in the property and may do so separate and apart from the note. The trial court properly applied *Holden* and *Walker* in determining that Steven's mortgage is valid and enforceable through foreclosure or ejectment, two remedies which are governed under separate statutes of limitations. Specifically, the trial court stated:

In regards to the mortgage, it was long standing Ohio Law that if the note was secured by a mortgage, then the mortgage was subject to the same statute of limitations. See *Kerr v. Lydecker*, 51 Ohio St. 240, 253 [(1894)][.]

However, in *Deutsche Bank Natl. Trust Co. v. Holden*, 147 Ohio St.3d 85 (2016), the Court held that the mortgage on a note would be subject to a different statute of limitations than the note. "Holden" held that an ejectment would have a 21-year statute of limitation and a foreclosure would have a 15-year statute of limitation.

In *Bank of New York Mellon v. Walker*, 78 N.E.2d 930 (2017) Eighth Dist. Ct. of Appeals (Cuyahoga), the Court held, "Therefore, even if Bank of New York is unable to obtain a judgment on the note, they still have a remedy in ejectment or to obtain judgment on the mortgage through a foreclosure action under the longer statute of limitation." Id. At 937[.]

* * *

Case No. 23 HA 0003

As remedies on a note and on a mortgage are disparate, a holder of the note who is time barred still has remedies on the mortgage in ejectment or foreclosure. See *Holden* and *Walker supra.*

In the case at bar, [Steven] would be time barred on the note but may still seek remedy on a valid mortgage by ejectment 21-year statute of limitations or foreclosure 15-year statute of limitations.

(1/18/2023 Judgment Entry, p. 2-3).

**{¶30}** Based on the facts in this case, and the precedent from the Supreme Court of Ohio in *Holden* and this court in *Rutana*, the trial court did not err in holding that Steven may still seek remedies on the mortgage under the longer statute of limitation periods in ejectment or foreclosure.

**{¶31}** Marie's first issue is without merit.

**{¶32}** Second, Marie alleges the trial court erred in finding the mortgage was supported by sufficient consideration. Marie stresses:

The Mortgage failed for want of consideration. [Steven] did not give any consideration for it. Instead, as [Elaine] explained, the Mortgage was a 'fake lien' to ensure that the Cleveland Clinic did not put a lien on the Property. There was no actual consideration bargained for. This is confirmed by [Steven's] testimony: he could not itemize the consideration that he claimed to have provided, and despite claiming that he advanced John over $200,000 over the course of their decades' long friendship, he testified that John never paid him anything on this alleged debt.

(6/27/2023 Appellant's Brief, p. 14-15).

**{¶33}** "A facially valid mortgage bears a strong presumption of validity." *Huntington Natl. Bank v. Blount*, 8th Dist. Cuyahoga No. 98514, 2013-Ohio-3128, ¶ 27. "A party challenging the validity of a mortgage must prove, by clear and convincing evidence, that the mortgage is not valid." 69 Ohio Jur.3d Mortgages § 37; *In re Seymour*, 442 B.R. 652 (Bankr. S.D. Ohio 2010) (applying Ohio law).

Clear and convincing evidence is evidence sufficient to "produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985). The clear and convincing standard does not require clear and unequivocal evidence. *In re Estate of Haynes*, 25 Ohio St.3d. 101, 104, 495 N.E.2d 23 (1986). In determining whether a trial court based its decision upon clear and convincing evidence, a reviewing court must examine the record and determine whether the trier of fact had sufficient evidence before it to satisfy this burden of proof. *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). The credibility of witnesses and weight of the evidence are primarily issues for the trial court, as the trier of fact. *In re Ohler*, 4th Dist. Hocking No. 04CA8, 2005-Ohio-1583, ¶ 15.

*Matter of R.A.F.*, 7th Dist. Jefferson No. 23 JE 0010, 2023-Ohio-2615, ¶ 39.

"A party may defend against having to pay under a promissory note by arguing failure or want of consideration for the note." *Santomieri v. Mangen*, 2018-Ohio-1443, 111 N.E.3d 483, ¶ 13 (3d Dist.). A want of consideration differs from a failure of consideration. "Want of consideration is a total lack of any valid consideration for the contract. Failure of consideration is the neglect, refusal and failure of one of the contracting parties to do, perform or furnish, after making and entering into the contract, the consideration in substance and in fact agreed upon." *John P. Timmerman Co. v. Hare*, 3d Dist. Allen No. 1-03-14, 2003-Ohio-4622, ¶ 10, citing *Colonial Ins. Co. v. Graw*, 102 Ohio App. 430, 438, 129 N.E.2d 491 (8th Dist. 1955).

Under the law, the existence of consideration for promissory notes is presumed. "(T)his presumption continues until it is shown that there was none; and the burden of showing this is on the party attacking the note for want of consideration." (Citations omitted.) *Santomieri* at ¶ 16, citing *Dalrymple v. Wyker*, 60 Ohio St. 108, 53 N.E. 713 (1899). The burden of proving either failure of consideration or want of consideration is on the

party asserting it. *Ohio Loan & Discount Co. v. Tyarks*, 173 Ohio St. 564, 568, 184 N.E.2d 374 (1962).

*Bakhshi v. Baarlaer*, 2d Dist. Montgomery Nos. 28767 and 28768, 2021-Ohio-13, ¶ 45-46.

**{¶34}** Thus, the presumption under Ohio law is that a mortgage is supported by consideration and the party contesting the existence of consideration must prove lack of consideration by clear and convincing evidence. Once consideration is found to exist, a court may not inquire into the adequacy of the consideration. In the instant matter, the testimony and evidence provided at the bench trial established that an antecedent debt existed, and that such debt acted as consideration in support of the promissory note and mortgage. Specifically, the trial court stated:

> "'Consideration, meaning that which is bargained for and given in exchange for a promise, is a necessary element of a binding contract, and the absence of consideration precludes the formation of a valid contract.'" 17 Ohio Jurisprudence 3d, Contracts 39.

> Here, the note in question secured by the mortgage is for $200,000. Obviously, $200,000 would be ample consideration for this note and mortgage.

> [Marie] argues that the $200,000 is, at best, past consideration which [Marie] argues is not valid consideration.

> In *W. RES. Coop., Inc. v. Aqarwal*, [sic] 11th Dist. Geauga No. 2009-G-2892, 2010-Ohio-2950 states, "It is well-settled that a note given as security for an antecedent debt is sufficient consideration to establish a valid obligation under a promissory note."

> In the case at bar, [Steven] gave credible testimony that he and John Yankus had been friends for around five decades. [Steven] further gave credible testimony that he had periodically loaned [John] money in cash since the late 1980s up and until [John's] death in 2015. There is further

testimony that [Steven] paid for improvements to the property subject to the mortgage herein. [Steven] testified that money and material loaned to [John] was always intended to be repaid by [John]. [John's] execution of the note and mortgage before a pending surgery in 2013 was purport (sic) by [Steven] to be in acknowledgement of that debt.

The Court heard argument that [Steven's] inaction to collect on the note or mortgage until [Marie] brought suit proves that consideration was absent does not meet the clear and convincing evidence burden of proof [Marie] must show.

Wherefore, the Court is satisfied that the mortgage is supported by consideration.

(1/18/2023 Judgment Entry, p. 3-4).

{¶35} Marie failed to meet her burden of proof to support her argument that consideration did not support the note or mortgage. Marie's daughter, Elaine, offered hearsay testimony regarding execution of the note and mortgage. Neither Marie nor Elaine were parties to, nor involved in any manner, in Steven's and John's dealings, including Steven's loans or the execution of the note and mortgage. Despite this, Marie rests her entire burden of proof solely on Elaine's hearsay testimony.

{¶36} The trial court was in the best position to determine the credibility of the witnesses and give the evidence the weight it deserved. *See Bova, supra,* ¶ 36. The court properly determined that the note and mortgage were supported by consideration, i.e., that the promissory note secured by the mortgage may be supported by an antecedent debt. *Agarwal, supra,* at ¶ 20; *Sur-Gro Plant Food Co., Inc. v. Morgan*, 29 Ohio App.3d 124, 129-130 (12th Dist.1985); R.C. 1303.33(A)(3). The record reveals the plain language of the note provides it is secured by the mortgage for $200,000; Steven gave credible testimony that he loaned John money and materials to improve the property; and the money loaned to John was always intended to be repaid. The court's decision is not against the manifest weight of the evidence.

{¶37} Marie's second issue is without merit.

**{¶38}** Third, Marie maintains the trial court erred in finding the mortgage was not fraudulent. Marie asserts that "[Elaine's] testimony [that the mortgage was a "fake lien,"] coupled with [Steven's] inability to produce any evidence and his failure to ever enforce the Note and Mortgage--showed that the Mortgage was a fraudulent instrument." (6/27/2023 Appellant's Brief, p. 15). Marie stresses that "[t]wo days before he had open-heart surgery, and in an effort to defraud the Cleveland Clinic, John and [Steven] devised a scheme * * * [constituting] fraud." (*Id.*)

**{¶39}** "In order for a plaintiff to recover for fraud, she must prove, among other things, that the defendant knowingly or recklessly made a false statement with the intent of misleading another into relying upon it." *Equicredit Corp. of Am. v. Jackson*, 7th Dist. Mahoning No. 03 MA 191, 2004-Ohio-6376, ¶ 70, citing *Burr v. Bd. of Cty. Commrs. of Stark Cty.* (1986), 23 Ohio St.3d 69, paragraph two of the syllabus (1986).

**{¶40}** Specifically, the trial court stated:

[Marie] brought testimony from [Elaine], who is a niece to John Yankus, at trial. [Elaine's] testimony indicated that before [John] had surgery, he indicated that he executed the note and mortgage to avoid attachment of the property by the hospital for the costs of his care.

The Court finds that there is insufficient evidence to establish fraud on the note and mortgage. The standard being clear and convincing as to burden of proof, the Court is satisfied that looking at the testimony presented by the parties, there is evidence on each side that is plausible as to the note and mortgage's validity. [Marie] provided evidence, testimony to [John's] statement against interest in regard to defrauding the hospital and actual medical bills of around $50,000 owed to the hospital. [Steven] provided testimony of [Steven's] friendship with [John], [Steven's] loan history to [John], and services rendered in benefit to the property in question.

Furthermore, there is no evidence that [John] and [Steven] ever terminated the note and mortgage even though some 18 months passed from the execution of the note and mortgage and [John's] death. Contrastingly, no

action was taken by [Steven] to enforce the note and mortgage until [Marie] filed suit.

Considering all those factors, clear and convincing evidence has not been established in regards to [Marie's] claim of fraud.

(1/18/2023 Judgment Entry, p. 4).

**{¶41}** As addressed, a facially valid mortgage is presumed valid unless clear and convincing evidence is produced, proving that the mortgage is invalid. In the case at bar, no claim for fraud was asserted in the complaint. *See Hanick v. Ferrara*, 7th Dist. Mahoning No. 19 MA 0074, 2020-Ohio-5019, ¶ 124 ("When averring fraud in the complaint, the circumstances constituting fraud shall be set forth with particularity. Civ.R. 9(B))". Rather, Marie sought to invalidate the mortgage claiming that want of consideration voids the mortgage and that John executed the note and mortgage to avoid medical creditors. However, Marie failed to meet her burden of proof that the mortgage was fraudulently executed to avoid medical creditors and relied only upon hearsay within hearsay to support her claim.

**{¶42}** The trial court considered the evidence, as revealed in its January 18, 2023 judgment, and properly determined that the note and mortgage were not fraudulently executed. Elaine's contention of a "fake lien" and "a scheme" devised by Steven and John to "defraud the Cleveland Clinic" is not supported by the record. It is worth noting that on cross-examination, Elaine testified she would have been okay if John had put a "fake lien" on the property if he had done so in favor of a family member rather than Steven. (1/4/2023 Bench Trial Tr., p. 94).

**{¶43}** Marie and Elaine had no personal knowledge of the transaction and dealings between Steven and John and no evidence was presented that medical creditors sought to encumber the property. Furthermore, evidence of consideration supporting the mortgage exists and Marie fails to prove fraud. The trial court was in the best position to determine the credibility of the witnesses and give the evidence the weight it deserved. *See Bova, supra,* ¶ 36. The court's decision is not against the manifest weight of the evidence.

**{¶44}** Marie's third issue is without merit.

**CONCLUSION**

**{¶45}** For the foregoing reasons, Marie's sole assignment of error is not well-taken.  The January 18, 2023 judgment of the Harrison County Court of Common Pleas granting declaratory judgment on Steven's counterclaim and dismissing Marie's complaint following a bench trial is affirmed.

Robb, J., concurs.

Hanni, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Harrison County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**