**COLUMBIANA COUNTY BOARD OF COMMISSIONERS, Appellant,**

v.

**NATIONWIDE INSURANCE COMPANY, Appellee.**

[Cite as *Columbiana Cty. Bd. of Commrs. v. Nationwide Ins. Co.* (1998), 130 Ohio App.3d 8.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

No. 96 CO 50.

Decided Sept. 21, 1998.

*Allen Schulman, Jr.* and *Jack A. Blakeslee,* for appellant.

*Wiley & Mathews* and *Ralph Dublikar,* for appellee.

VUKOVICH, Judge.

This appeal arises from the decision of the Columbiana County Court of Common Pleas granting summary judgment in favor of Nationwide Insurance Company, thereby finding no coverage for the Columbiana County Board of Commissioners' claim for loss of county funds. For the following reasons, the decision of the trial court is reversed and this cause is remanded for further proceedings consistent with this opinion.

## I. FACTS

Nationwide, appellee, issued a policy of insurance, policy no. 92PR977270–0011L, to the Columbiana County Board of Commissioners, appellant. The policy provided coverage for the period commencing August 1, 1993, and ending August 1, 1994. On or about September 14, 1993, appellant discovered that the Columbiana County Treasurer, Ardel Strabala ("Strabala"), had illegally invested and/or diverted county funds through his son, Steven Strabala. As a result of this activity, the county experienced significant losses. Strabala subsequently pled guilty to having an unlawful interest in a public contract pursuant to R.C. 2921.42(A)(2).

Upon discovering Strabala's activity, appellant filed a claim for benefits with appellee under the appropriate insurance policy. In that claim, appellant initially sought coverage under the "Employee Dishonesty" provision of coverage, Form A. After a review of the matter, appellee denied coverage upon the basis that Strabala was not an employee of appellant.

On September 1, 1995, appellant filed an action in the Columbiana County Court of Common Pleas seeking a declaration of rights under the insurance policy issued by appellee. The action as originally filed again claimed coverage under the "Employee Dishonesty" provision of the policy. On November 9, 1995, appellant filed its answer as well as a motion for a change of venue and for appointment of a visiting judge due to fairness and impartiality concerns. The trial court granted the request for a visiting judge on December 20, 1995, but denied the request for a change of venue.

Subsequently, on March 11, 1996, appellant amended its complaint to include a claim for coverage under the "Theft, Disappearance and Destruction" provision of coverage, Form C. Appellee filed a timely answer to the amended complaint on April 8, 1996.

On March 28, 1996, appellee filed a motion for summary judgment as related to appellant's initial complaint, which was based on the "Employee Dishonesty" provision of the policy. Appellee followed up with a motion for summary

judgment on April 25, 1996, regarding appellant's second complaint, which sought coverage under the "Theft, Disappearance and Destruction" provision of the policy. A memorandum contra to appellee's motion for summary judgment as well as a cross-motion for summary judgment was filed by appellant on May 22, 1996. In appellant's motion, it conceded that Strabala was not an employee at the time of the inappropriate conduct. Through its admission of this fact, appellant submitted that the claim as outlined in the original complaint was without merit. Appellee filed a reply brief to appellant's cross-motion for summary judgment on May 30, 1996.

Based on the content of the motions, on July 13, 1996, the trial court granted summary judgment on all counts in favor of appellee and overruled appellant's motion. It is from this decision that appellant filed a timely notice of appeal on July 30, 1996. Appellant has reiterated its concession that Strabala was not appellant's employee at the time of the incident in question. Therefore, appellant's sole challenge for coverage is encompassed in the "Theft, Disappearance and Destruction" provision of the policy.

## II. ASSIGNMENTS OF ERROR

Appellant raises three assignments of error on appeal. Appellant's first assignment of error reads:

"The trial court erred in granting defendant–appellee's motion for summary judgment, when it determined that plaintiff–appellant's loss did not result directly from theft or disappearance, thus excluding coverage under the subject policy."

Appellant's second assignment of error reads:

"The trial court erred in granting defendant–appellee's motion for summary judgment, when it determined that the county treasurer was an authorized representative of the plaintiff–appellant, thus excluding coverage under the subject policy."

Appellant's third assignment of error reads:

"The trial court erred in granting defendant–appellee's motion for summary judgment, when it determined that the plaintiff–appellant's loss of county funds occurred outside the premises on the basis of unauthorized instructions issued by the county treasurer."

Due to the fact that each of appellant's assignments of error relates to alleged trial court error in granting summary judgment based upon particular aspects of the policy, all assignments of error will be discussed together.

Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains

to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379–1380. Additionally, trial courts should award summary judgment with caution, resolving doubts and construing evidence in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138, 141. In handling cases which have been disposed of via summary judgment, appellate courts apply a *de novo* standard of review to the trial court's decision. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 685–686.

In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Ohio Supreme Court set forth the standard for considering motions for summary judgment:

"[W]e hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis of the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (Emphasis *sic.*) *Id.* at 293, 662 N.E.2d at 274.

In the present action, the parties dispute the interpretation of certain policy provisions. The discord pertains to coverage provisions as well as exclusionary provisions. The relevant provisions are contained in Nationwide's Coverage Form C, "Theft, Disappearance and Destruction," which states:

"A. COVERAGE—We will pay for loss of Covered Property resulting directly from the Covered Cause of Loss.

"1. Section 1.— Inside the Premises:

"a. Covered Property: 'Money' and 'securities' inside the 'premises' or a 'banking premises.'

"b. Covered Causes of Loss:

"(1) 'Theft.'

"(2) Disappearance.

"(3) Destruction.

" * * * *

"D. ADDITIONAL EXCLUSIONS, CONDITION AND DEFINITIONS: In addition to the provisions in the Crime General Provisions, this Coverage Form is subject to the following:

"1. Additional Exclusions: We will not pay for loss as specified below:

" * * * *

"b. Acts of Employees, Directors, Trustees or Representatives: Loss resulting from any dishonest act committed by any of your 'employees,' directors, trustees or authorized representatives:

" * * * *

"f. Transfer or Surrender of Property:

"(1) Loss of property after it has been transferred or surrendered to a person or place outside the 'premises' or 'banking premises':

"(a) On the basis of unauthorized instructions;

" * * * *

"3. Additional Definitions:

"a. 'Banking Premises' means the interior of that portion of any building occupied by a banking institution or similar safe depository.

" * * * *

"d. 'Premises' means the interior of that portion of any building you occupy in conducting your business.

"e. 'Theft' means any act of stealing."

 In reviewing the issue of coverage under a policy, insurance policies are generally interpreted in accordance with the same rules as other types of contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1101–1102. An age-old maxim of contract interpretation is that when a contractual provision is ambiguous, it must be strictly construed against the drafter. *McKay Machine Co. v. Rodman* (1967), 11 Ohio St.2d 77, 80, 40 O.O.2d 87, 89, 228 N.E.2d 304, 307. Accordingly, it has been held

that when the language of an insurance policy is determined to be doubtful, uncertain or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured party. *Faruque v. Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St.3d 34, 38, 31 OBR 83, 86–87, 508 N.E.2d 949, 952. This is particularly the case in the use of an exclusion from liability, which must be clear and exact in order to be given effect. *U.S. Fid. & Guar. Co. v. Lightning Rod Mut. Ins. Co.* (1997), 80 Ohio St.3d 584, 586, 687 N.E.2d 717, 719–720. Furthermore, when provisions of an insurance policy are reasonably susceptible of more than one interpretation, they must be construed strictly against the insurer. *Faruque, supra.* Any reasonable construction which results in coverage for the insured must be adopted by a trial court under these circumstances. *Sterling Merchandise Co. v. Hartford Ins. Co.* (1986), 30 Ohio App.3d 131, 137, 30 OBR 249, 255–256, 506 N.E.2d 1192, 1198–1199.

However, in the event the terms of the insurance policy are clear and unambiguous, the interpretation of the policy is a matter of law. *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 448–449, 474 N.E.2d 271, 272–273. Therefore, the issue of coverage under a policy may be appropriately resolved upon summary judgment. *Id.*

In determining whether ambiguities or uncertainties exist within the insurance policy, words and phrases in the policy will be given their plain and ordinary meaning absent specific contractual definitions. *Watkins v. Brown* (1994), 97 Ohio App.3d 160, 164, 646 N.E.2d 485, 487. Coverage must be determined by a reasonable construction of the document in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language actually employed. *Cincinnati Ins. Co. v. Am. Line Builders* (1994), 93 Ohio App.3d 392, 395, 638 N.E.2d 1047, 1048–1049. An insurance company has no obligation to its insured or to others harmed by the actions of the insured unless the conduct at issue falls within the scope of coverage as defined in the policy. *Gearing v. Nationwide Ins. Co.* (1996), 76 Ohio St.3d 34, 36, 665 N.E.2d 1115, 1117.

Here, the central issue of the case is whether Strabala's illegal transfer of county funds to his son constituted a covered cause of loss and thus gave rise to coverage under the policy. It is undisputed that a loss of covered property occurred from inside the premises of the insured. The trial court clearly indicates in its judgment entry that the loss of money (covered property) from within the treasurer's office (inside the premises) establishes the initial require-ments for coverage. However, it must be shown that this loss of property occurred as a direct result of a covered cause of loss. Therefore, it must first be determined whether the loss resulted from a theft or disappearance (covered

causes of loss) as the trial court based its summary judgment decision in part on a finding that neither of these requisite events occurred.

Under the definition section of the policy, a "theft" is defined as "any act of stealing." The trial court looked to the Ohio Revised Code for additional guidance on the common use of the term "theft." According to R.C. 2913.02, "theft" commonly connotes the obtaining or exerting of control over the property of another with the purpose to deprive the owner of the property. In applying these definitions, the trial court concluded that the improper or illegal investment by Strabala did not constitute a theft in that no personal gain was derived from the action. Additionally, the court relied upon the fact that the offense Strabala pled guilty to under R.C. 2921.42(A)(2) was not classified as a theft offense. Therefore, the court held that a theft did not occur and appellant was not entitled to coverage.

Appellant asserts that the trial court erred in reaching its determination that a theft in fact did not occur. In looking to the policy, appellant indicates that there is no requirement of a theft conviction pursuant to R.C. 2913.02 in order for coverage to apply. Appellant argues that the policy should provide coverage if Strabala's acts can in any way be characterized as a theft, regardless of whether he was subsequently convicted of a theft offense. Appellant argues that Strabala and his son used the county funds for their own benefit, depriving the county of the benefits of the funds. Although Strabala may not have intended to permanently deprive the county of the funds, appellant asserts that the funds were taken for noncounty purposes without giving proper consideration therefor.

Appellee counters these arguments by asserting that no evidence has been produced that Strabala engaged in any act of stealing or theft. The only evidence before the court was a plea of guilty to having an unlawful interest in a public contract.

 As has been previously indicated, the common usage of the term "theft" under R.C. 2913.02 requires an individual to knowingly exert or obtain control over the property of another with the purpose to deprive the owner. Pursuant to R.C. 2913.01(C)(3), "deprive" means to "accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration." As the definition indicates, intent to permanently deprive the owner of the property is no longer a necessary element of a theft offense. *State v. Breaston* (1982), 8 Ohio App.3d 144, 145, 8 OBR 201, 202, 456 N.E.2d 538, 539.

 A review of the record indicates that an issue of material fact is in existence as to whether a theft did in fact occur when Strabala transferred funds

to his son. While the trial court indicates that a theft did not occur, a review of the circumstances indicates the possibility that this conclusion is incorrect. The trial court bases its decision both on the fact that Strabala was not convicted of a "theft" offense and that he supposedly derived no gain from the appropriation of county funds. A review of the policy language does not indicate that a theft conviction is a prerequisite to finding that a theft occurred for coverage purposes. In fact it is irrelevant that a plea occurred to a nontheft offense. Merely because a nontheft plea arrangement was reached has no bearing on whether a theft occurred for coverage purposes. Additionally, while the trial court indicates that Strabala received no personal gain from the transaction, personal gain does not play a role in whether a theft occurred. As previously cited, a theft offense involves knowingly obtaining control over the property of another with the intent to deprive. Personal gain is not a factor in determining the occurrence of a theft.

A review of the matter indicates that it is reasonable to conclude Strabala intended to deprive the county of the funds which it rightfully possessed. Such a showing would merely require the use of funds by Strabala with the purpose not to give proper consideration in return for the money. In the event this burden is met, coverage would clearly apply since the requirements for a showing of theft would have been met. Appellant correctly states that while direct proof is not on record that Strabala intended to use county funds for his own benefit, intent can be inferred from conduct and surrounding circumstances. *Edmondson v. Steelman* (1992), 87 Ohio App.3d 455, 458, 622 N.E.2d 661, 662–663. Since the trial court's proceedings never progressed to the point of determining intent on behalf of Strabala, the matter clearly must be remanded to the trial court for further proceedings to determine the factual issue of whether a theft occurred when Strabala transferred county funds outside of his authority.

In addition to arguing that a theft occurred, appellant puts forth the argument that a disappearance occurred pursuant to Coverage Form C of the policy, thus giving rise to coverage. This argument supplements that made for purposes of indicating that a theft occurred.

In its judgment entry granting summary judgment, the trial court found that no definition of "disappearance" was given in the policy. Therefore, it determined that a dictionary definition should be given to the term. Therefore, "disappearance" was defined as "ceasing to be" or "passing out of existence." The trial court reasoned that if the loss of property is traceable, it has not disappeared even if the property is not recoverable. In that the funds are traceable, the trial court reasons that they have not passed out of existence or ceased to be.

Appellant argues that a more proper meaning of "disappearance" is the disappearance of covered property "from within the covered premises." To require funds to cease to be or pass out of existence would create repetitive policy language as this would require a destruction of funds. Since the policy already provides coverage for the "destruction" of covered property, appellant reasons that requiring only a disappearance from the covered premises is a more appropriate usage of the term disappearance than that given by the trial court.

In light of the plain and ordinary meaning of "disappearance," the trial court was correct in determining that as a matter of law a disappearance did not occur. The record reflects that the funds were intentionally and knowingly converted into investments by the treasurer of the county. This conversion of funds cannot be likened to a disappearance in that they are traceable and recognizable. While the funds may no longer be present at the location of the county treasury, they cannot be said to have disappeared. Therefore, the trial court was correct in granting summary judgment on the issue of coverage as related to a disappearance of funds.

Appellant's second attack upon the trial court's decision pertains to the finding that coverage was specifically excluded under the policy's exclusionary provision (D)(1)(b) of Coverage Form C. Under this provision, coverage is specifically excluded if the act resulting in loss was performed by an employee, director, trustee or representative of the insured. Upon granting summary judgment for appellee, the trial court found that while the treasurer was not an "employee" of the county, he was by law the chief investment officer and representative of the county for purposes of investment. Therefore, the exclusionary language of the policy barred coverage.

Appellant argues that Strabala was not its agent or representative but rather both appellant and the treasurer are trustees acting for the benefit of the general public. Additionally, appellant argues that Strabala owed no fiduciary duty or allegiance to it. Instead, as an elected official, his sole duty was to the public as a whole. Furthermore, the investment powers of the treasurer are nondelegable and separate duties bestowed by the state legislature. Therefore, appellant concludes that Strabala was not appellant's authorized representative or trustee and the loss of funds should be a covered loss under the policy provisions.

Appellee contends that the acts of Strabala were conducted during the course of his duties as appellant's authorized representative. Nonetheless, appellee acknowledges that the county treasurer is an elected official who is entrusted with a nondelegable duty of handling all county funds and monies.

Pursuant to R.C. 135.31, "treasurer" refers to the county treasurer who, in turn, is the "investing authority." R.C. 135.341 creates a County Investment

Advisory Committee, which is to be made up of the county treasurer, the chairman of the board of commissioners, and one other commissioner. Under R.C. 135.341, this committee functions to "establish written county investment policies and shall meet at least once every six months at the call of its Chairman to review or revise it[s] policies and to advise the investing authority on the county investments in order to ensure the best and safest return of funds available to the county for deposit or investment." (Emphasis added.)

It is clear that the Board of Commissioners itself is powerless to invest funds on behalf of the county. After all, the county treasurer holds sole responsibility for investment of county funds and may not delegate those duties to any party. While appellee argues that the composition of the County Investment Advisory Committee supports a finding that the treasurer is an authorized representative of appellant, that is not the case. R.C. 135.341 specifically states that the Committee only advises the investing authority (treasurer). Nothing in the statute indicates that the committee has any authority or control over the treasurer's actions. It is merely in place as a source of advice, which the treasurer applies within his discretion. While the treasurer certainly is a trustee of funds for the public, no such relationship exists between appellant and the treasurer. Therefore, the trial court erred in finding that the exclusionary clause as outlined in section (D)(1)(b) of Coverage Form C was applicable. Therefore, appellant's second assignment error is also held to have merit.

Appellant's final assertion of error relates to the trial court's finding that the exclusion as outlined in section (D)(1)(f)(1) of Coverage Form C of the policy was applicable and thus barred coverage. Under this exclusion, coverage is barred if the loss occurs after the property is transferred outside the "premises" on the basis of unauthorized instructions.

Appellant argues that this exclusionary provision applies only to situations where the covered property is lost outside the subject property. It is appellant's position that the loss occurred at the exact moment the illegal transfer of funds was consummated which was within the covered premises. Therefore, the exclusionary provision should be deemed to be nonapplicable.

It is appellee's position that Strabala knowingly and intentionally transferred or surrendered covered property to a person outside the premises, thereby excluding coverage. The exclusion at issue applies when the loss of property occurs after it has been "transferred or surrendered" to a person outside the covered premises.

A determination of the applicability of this exclusionary provision is necessarily linked to the issue of whether a theft did in fact occur. Therefore, this determination as well hinges on an issue of material fact and as such, summary judgment was inappropriate.

Since the issue of whether a theft occurred relies on a factual determination, so does the applicability of this outside-the-premises exclusionary provision. For instance, if it is determined that a theft did occur, it would necessarily follow that the county experienced a loss of funds the moment the funds were improperly transferred or surrendered. The moment the county was deprived of lawful possession of the funds marks the moment in which the loss of covered property occurred. Under this scenario, the exclusionary provision outlined in section (D)(1)(f)(1) would not be applicable as the loss would have occurred on premises rather than after the funds were transferred. In the event that it is determined a theft did not occur, the aforementioned "outside the premises" exclusionary provision could be applicable as the loss would not have occurred until the investment soured. The two sections are inextricably linked. Therefore, appellant's third assignment is determined to have merit.

Based on the foregoing analysis, the decision of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion. The issues raised in appellant's first assignment of error, as related to theft, as well as appellant's third assignment of error rely on a determination of an issue of material fact and thus must proceed on the merits. The trial court need not revisit the issue raised in appellant's second assignment of error as it is this court's determination that appellant is successful on this issue as a matter of law.

*Judgment reversed*
*and cause remanded.*

Cox and WAITE, JJ., concur.