[Cite as *Bova v. B & J Pools, Inc.*, 2023-Ohio-1680.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

JOSEPH BOVA ET AL,

Plaintiffs-Appellees,

v.

B & J POOLS, INC., ET AL,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 MA 0033**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2020 CV 726

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed in part. Reversed in part and Remanded.

---

*Atty. Christopher A. Maruca*, 201 East Commerce Street, Suite 316, Youngstown, Ohio 44503, for Plaintiffs-Appellees

*Atty. William Kissinger*, 7631 South Avenue, Suite F, Youngstown, Ohio 44512, for Defendant-Appellant.

Dated: May 16, 2023

**HANNI, J.**

{¶1}    Defendant-Appellant, B & J Pools, Inc. (B & J), appeals from a Mahoning County Common Pleas Court judgment finding that it was liable to Plaintiffs-Appellees, Joseph Bova and Sherri Bova, for breach of contract and unjust enrichment following a bench trial.

{¶2}    The Bovas were interested in installing an in-ground pool at their home. They met with defendant, James Shoemaker, one of the owners of B & J, to discuss plans for the pool.  On April 3, 2019, the Bovas entered into a contract with B & J for the installation of a swimming pool at their residence (the contract).  The total for the project was $92,744.52 and was payable in four installments:  (1) $45,000 due upon signing of the contract; (2) $25,000 due upon delivery of the "pool package"; (3) $20,000 due upon concrete ready for paint; and (4) $2,744.52 due upon completion.  The term "pool package" was not defined in the contract.  The contract did list various parts of the pool under the heading, "The Pool."  The Bovas paid the initial $45,000 upon signing the contract.

{¶3}    The Bovas hired Hunter Electrical Services to install all electrical systems required for the pool.

{¶4}    B & J began installation of the pool on May 2, 2019.  Some problems arose with the side panels being too high and the lower part of the pool not being properly leveled.  Once these issues were corrected, B & J poured the concrete pool floor.

{¶5}    The Bovas paid the second installment of $25,000 on August 20, 2019. However, not all of the pool components had yet been delivered including pumps, filters, and heaters.

{¶6}    Cracks then developed between the side panels and another crack developed on the pool floor.  B & J undertook to remedy these issues.

{¶7}    The relationship between the parties deteriorated and ultimately ended in November 2019.  The Bovas did not make the final two installment payments.  The pool was never "winterized" and, as a result, further damage occurred.

{¶8} The Bovas then hired BC Contracting to purchase the remaining necessary parts and conduct additional labor to finish the pool. The Bovas paid $58,975.07 to BC Contracting for its work.

{¶9} The Bovas filed a complaint on April 6, 2020, against B & J and Shoemaker. They brought claims for breach of contract and unjust enrichment and sought to pierce the corporate veil to hold Shoemaker personally liable. B & J and Shoemaker filed an answer and counterclaim also raising claims for breach of contract and unjust enrichment.

{¶10} The matter proceeded to a bench trial before a magistrate on March 2, 2022. The magistrate listened to testimony from Joseph Bova, the electrician, the contractor hired to finish the pool, and Shoemaker. The magistrate noted that because Shoemaker drafted the contract, any ambiguities or inconsistencies were to be construed against him and B & J. The magistrate also found that Shoemaker's testimony was not credible. The magistrate found that B & J failed to construct the pool in a competent and workmanlike manner. However, he also found that the Bovas did not sustain their burden to pierce the corporate veil. Consequently, the magistrate found in favor of the Bovas on their claims for breach of contract and unjust enrichment. He found in favor of Shoemaker on the Bovas' claim to pierce the corporate veil. The magistrate also ruled in favor of the Bovas on Shoemaker's and B & J's counterclaims. The magistrate awarded the Bovas a judgment of $100,000.

{¶11} The trial court entered judgment consistent with the magistrate's decision. B & J filed a timely notice of appeal on April 7, 2022. It now raises two assignments of error for our review.

{¶12} B & J's first assignment of error states:

THE TRIAL COURT ERRED WHEN IT RULED THAT DEFENDANT B & J POOLS INC. WAS GUILTY [sic] OF BREACH OF CONTRACT AND UNJUST ENRICHMENT.

{¶13} B & J argues that a party cannot maintain an unjust enrichment action if there is an express contract. Thus, it asserts this court must reverse the judgment on the Bovas' unjust enrichment claim since the trial court determined that B & J breached the contract.

Case No. 2022 MA 0033

**{¶14}** In response, the Bovas assert they can maintain an unjust enrichment claim in addition to a breach of contract claim where the contract does not cover a particular dispute between the parties.

**{¶15}** In order to establish a breach of contract claim, a plaintiff must establish the following elements: "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (2d Dist.1994). To prove an unjust enrichment claim, the plaintiff must prove: (1) he conferred a benefit on the defendant; (2) the defendant knew of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust for him to retain that benefit without payment. *Apostolos Group, Inc. v. Josephson*, 9th Dist. Summit No. 20733, 2002-Ohio-753.

**{¶16}** Generally, the doctrine of unjust enrichment is "inapplicable if an express agreement existed concerning the services for which compensation is sought; [and] the parameters of the agreement limit the parties' recovery, in the absence of bad faith, fraud or illegality." *Pawlus v. Bartrug*, 109 Ohio App.3d 796, 800, 673 N.E.2d 188 (9th Dist.1996), citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55, 544 N.E.2d 920 (1989). However, when evidence is presented at trial that a party breached the contract and was unjustly enriched by separate conduct, both claims may be viable. *Zeck v. Sokol*, 9th Dist. Medina No. 07CA0030-M, 2008-Ohio-727, ¶ 14-16.

**{¶17}** In this case, evidence was presented at trial that B & J breached the contract. But there was no evidence presented that B & J was unjustly enriched by separate conduct. Likewise, there was no evidence of bad faith, fraud, or illegality.

**{¶18}** The contract provided that B & J would install a swimming pool at the Bovas' residence for the sum of $92,744.52. (Plaintiffs' Ex. B). The contract then provided:

| | |
|---|---|
| PAYMENT UPON SIGNING THE CONTRACT | $ 45,000.00 |
| PAYMENT UPON DELIVERY OF POOL PACKAGE | $ 25,000.00 |
| PAYMENT UPON CONCRETE READY FOR PAINT | $ 20,000.00 |
| BALANCE UPON COMPLETION | $ 2,744.52 |

B & J Pools Inc. states that all material used in completing the pool installation contracted for herein will be high quality and that all work on the pool will be done in competent and workmanlike manner; that if any substantial defect occurs in the workmanship of the pool it will be remedied without cost to the owner, provided that written notice thereof is given the company within one (1) year after completion of such work. Walks or docks are not part of the pool. No claim may be filed under this warranty and no obligations to make adjustment there under will accrue until the full indebtedness of the owner to B & J Pools Inc. is paid.

(Plaintiffs' Ex. B)

{¶19} The contract does not define the term "pool package." But page two of the contract contains the heading "THE POOL." Listed under this heading are all of the components of the pool, including such items as the 16 x 32 double pool evolution, auto cover, drain, deck jets, skimmers, heater, plumbing, and labor. It then lists five items that are not included.

{¶20} Shoemaker testified that B & J drafted the contract. (Tr. 183, 186). He stated that the term "pool package" only included the panels, the anchors, the stanchions, the steps, and the brackets. (Tr. 187, 203-204). Joseph Bova testified that under his reading of the contract, the "pool package" included all of the items listed under the heading "THE POOL" in the contract. (Tr. 23-29). Bova testified that the pool walls and brackets were delivered to his house but many of the other items listed were never delivered. (Tr. 25-29).

{¶21} Despite his belief that the "pool package" had not been delivered, Bova testified that he paid B & J the second installment payment. (Tr. 44-46). Bova testified that he paid this second installment to B & J on August 20, 2019, despite the fact that many items of what he believed to be the "pool package" had not yet been delivered. (Tr. 46). Bova stated that Shoemaker asked him for the second installment because Shoemaker needed the money since he was running behind on other jobs. (Tr. 44).

{¶22} Bova testified that sometime after the epoxy was sprayed on the pool walls on September 25, 2019, cracks appeared in the pool walls. (Tr. 51, 55-59: Plaintiff's Ex. K). On October 16, 2019, the company that was subcontracted to spray on the epoxy

came back to attempt to fix the cracks. (Tr. 60). However, the company was unable to remedy the cracks completely. (Tr. 60-61). Bova also testified that because B & J did not prepare the pool walls properly, the spray epoxy did not adhere. (Tr. 64). Next, on November 18, 2019, B & J painted the pool floor. (Tr. 64). But the paint did not adhere. (Tr. 66). The Bovas had to pay another company to re-paint the pool. (Tr. 66). This was the last time B & J was at the Bova house. (Tr. 70-71). Bova testified that Shoemaker told him the pool then needed to be winterized and he would take care of it. (Tr. 71-72). However, B & J did not winterize the pool, which led to cracks in the pool floor. (Tr. 72; Plaintiff's Exs. O, P). Bova further testified there is currently a leak somewhere in the pool because it is continuously losing water. (Tr. 77).

**{¶23}** Bova testified that he contacted BC Contracting to finish/repair the pool. Bova stated that he had to purchase many items that B & J was supposed to provide under the contract but never did supply. (Tr. 81). These items included sand filters, heaters, and pumps. (Tr. 81). The supplies totaled $32,640.88. (Tr. 82, Plaintiff's Exs. U, V, W, X). In addition, Bova paid BC Contracting to pressure test the pool, repair plumbing and leaks, and fix fittings. (Tr. 84). In all, the Bovas paid $58,000 to BC Contracting to finish the pool and fix issues B & J had created. (Tr. 84-86).

**{¶24}** Bova testified that he paid B & J $70,000 in total. (Tr. 87). He acknowledged that he was not seeking reimbursement for that entire amount. (Tr. 87). He stated that he kept the pool walls, which were approximately $20,000 to $25,000, and the PVC pipes. (Tr. 87). And Bova stated that there was labor involved in installing the walls. (Tr. 87). In total, Bova testified that B & J was entitled to keep approximately $30,000 of the $70,000 paid. (Tr. 88).

**{¶25}** The Bovas hired electrician, Jonathan Hunter, to perform the electrical work required for the pool. Hunter testified that the wiring, heaters, pool cover, and control panels were not delivered to the Bova residence until mid-2020. (Tr. 125-126). Thus, he corroborated Joseph Bova's testimony that B & J never provided these items.

**{¶26}** Jeff Collingwood is in the business of heating, plumbing, and swimming pool repair. He testified the Bovas contacted him in 2020, to look at their pool and assess what they should do. (Tr. 147-148). Collingwood testified the pool was unfinished, the epoxy on the pool floor had to be replaced due to cracks, many pool components had to

be ordered, the laminars had to be repaired, the pool walls had to be resealed and sprayed, and the plumbing lines had to be tested to address leaks. (Tr. 148-154).

{¶27} Shoemaker testified on behalf of B & J. He testified that B & J was three days away from completing the Bovas' pool when the Bovas refused to pay the third installment payment. (Tr. 193-194, 197). Shoemaker stated B & J had already painted the pool, which triggered the third installment. (Tr. 194). On cross-examination, however, Shoemaker stated that he had not yet ordered the pumps, had not yet ordered the heaters, the auto-cover was not yet on site, the filter was not on site, the chlorinator was not on site, the lighting was not on site, the handrails were not on site, in addition to many other components. (Tr. 216-225).

{¶28} The above supports the Bovas' breach of contract claim. There was clearly a contract. The Bovas paid the first two installments totaling $70,000. B & J never ordered/delivered all of the pool components and it ceased working on the pool before it was completed. Additionally, the pool had issues with cracks, paint, and leaks. The Bovas had to pay $58,000 to another company to finish the job and repair the pool.

{¶29} Nonetheless, the evidence does not support an independent claim for unjust enrichment. "'[U]njust enrichment operates in the absence of an express contract or a contract implied in fact to prevent a party from retaining money or benefits that in justice and equity belong to another.' *Gallo v. Westfield Natl. Ins. Co.*, 8th Dist. Cuyahoga No. 91893, 2009-Ohio-1094, 2009 WL 625522, ¶ 19. * * * An unjust enrichment claim cannot stand when the parties have an otherwise enforceable agreement. In such situations, the appropriate claim is for a breach of contract." *Carbone v. Nueva Construction Group, L.L.C.*, 8th Dist. Cuyahoga Nos. 103942 and 104147, 2017-Ohio-382, ¶ 18. There is no evidence in this case that B & J retained money or another benefit other than the money the Bovas paid under the contract. Likewise, there is no evidence of bad faith, fraud, or some other illegality. Thus, the trial court erred in finding in favor of the Bovas on their unjust enrichment claim.

{¶30} The trial court awarded the Bovas a judgment of $100,000 on the breach of contract claim and the unjust enrichment claim combined. It did not separate the damages award by claim. Since the court erred in finding in favor of the Bovas on the unjust enrichment claim, that part of the award must be vacated.

**{¶31}** The general measure of damages in a contract action is the amount necessary to place the nonbreaching party in the position he or she would have been in had the breaching party fully performed under the contract. *F. Enterprises, Inc. v. Kentucky Fried Chicken Corp.*, 47 Ohio St.2d 154, 159, 351 N.E.2d 121 (1976). "[W]here a contractor breaches a contract and a portion of the contract is left unpaid, the proper measure of damages is the cost for the owner having to complete the work minus the part of the contract left unpaid." *Green Maple Enterprises, LLC v. Forrester*, 7th Dist. Jefferson No. 20 JE 0020, 2021-Ohio-4640, ¶ 93, citing *Lynn v. Schulte*, 11th Dist. Ashtabula Nos. 2015-A-0017, 2015-A-0026, 2015-Ohio-5527, ¶ 28.

**{¶32}** In this case, the total cost of the contract was $92,744.52. Of that amount, the Bovas paid B & J $70,000, leaving a remaining balance on the contract of $22,744.52. The Bovas also paid $58,000 to BC Contracting to finish the job and repair the pool. Subtracting the part of the contract left unpaid ($22,744.52) from the cost for the Bovas having to complete the work ($58,000) equates to a loss to the Bovas in the amount of $35,255.48. Thus, the proper amount of damages on the breach of contract is $35,255.48.

**{¶33}** Accordingly, B & J's first assignment of error has merit and is sustained.

**{¶34}** B & J's second assignment of error states:

THE TRIAL COURT ERRED WHEN IT FAILED TO RULE THAT PLAINTIFF, JOSEPH BOVA COMMITTED AN ANTICIPATORY BREACH AND WAS LIABLE TO DEFENDANT, B & J POOLS INC. FOR THE UNPAID BALANCE OF THE WRITTEN CONTRACT.

**{¶35}** Here, B & J contends the trial court should have found that the Bovas committed an anticipatory breach of contract. B & J asserts it was undisputed that the Bovas refused to pay the third draw. It points to Joseph Bova's testimony that he refused to pay the third draw even though Shoemaker had told Bova he needed the third draw to complete the work. (Tr. 95). It notes that Bova further testified the reason he did not pay the third draw was because, in his opinion, Shoemaker had been overpaid. (Tr. 95). Given this testimony, B & J argues, it was not liable for breach of contract and was justified

for stopping work on the pool. B & J argues Joseph Bova's opinions regarding the fairness of the contract or the quality of the work already completed were irrelevant.

**{¶36}** When reviewing civil appeals from bench trials, an appellate court applies a manifest weight standard of review. *Revilo Tyluka, L.L.C. v. Simon Roofing & Sheet Metal Corp.*, 193 Ohio App.3d 535, 2011-Ohio-1922, 952 N.E.2d 1181 (8th Dist.), citing App.R. 12(C), *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Judgments supported by some competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus (1978). See, also, *Gerijo, Inc. v. Fairfield*, 70 Ohio St.3d 223, 226, 638 N.E.2d 533 (1994). Reviewing courts must oblige every reasonable presumption in favor of the lower court's judgment and finding of facts. *Gerijo*, 70 Ohio St.3d at 226, 638 N.E.2d 533 (citing *Seasons Coal Co.*, supra). If the evidence is susceptible to more than one interpretation, then we must construe it consistently with the lower court's judgment. *Id*. In addition, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. *Kalain v. Smith*, 25 Ohio St.3d 157, 162, 495 N.E.2d 572 (1986).

**{¶37}** "An anticipatory breach of contract by a promisor is a repudiation of the promisor's contractual duty before the time fixed for performance has arrived." *McDonald v. Bedford Datsun*, 59 Ohio App.3d 38, 40, 570 N.E.2d 299 (8th Dist.1989). The promisor must express the repudiation in clear and unequivocal terms. *Id*.

*{¶38}* When a party to a contract repudiates the contract before the time that their performance is due, this constitutes an "anticipatory breach" or an "anticipatory repudiation" and the injured party has an action for breach of the contract. *Northway McGuffey College v. Brienza*, 7th Dist. Mahoning No. 07 MA 145, 2008-Ohio-6207, ¶ 34, citing *Daniel E. Terreri & Sons, Inc. v. Mahoning Cty. Bd. of Commrs.*, 152 Ohio App.3d 95, 2003-Ohio-1227, 786 N.E.2d 921, ¶ 44. The non-breaching party can also rely on an anticipatory repudiation as a defense against a later breach-of-contract claim. *Id*.

**{¶39}** The contract in this case provided that the second installment payment was due upon "delivery of pool package." The third installment payment was due upon

"concrete ready for paint." There was conflicting evidence regarding whether these triggering events occurred.

{¶40} The contract does not define the term "pool package." But the second page of the contract, titled "THE POOL," lists the components of the pool. Joseph Bova testified that under his reading of the contract, the "pool package" included all of the items listed under the heading "THE POOL." (Tr. 23-29). Shoemaker, on the other hand, testified that the term "pool package" only included the panels, the anchors, the stanchions, the steps, and the brackets. (Tr. 187, 203-204). Bova testified that the pool walls and brackets were delivered to his house but many of the other items listed were never delivered. (Tr. 25-29). Shoemaker agreed that many of the pool components had not been delivered to the Bovas' house. (Tr. 216-225).

{¶41} The term "pool package" is ambiguous. When a contractual provision is ambiguous, that provision is to be strictly construed against the drafter. *Columbiana Cty. Bd. of Commrs. v. Nationwide Ins. Co.*, 130 Ohio App.3d 8, 15, 719 N.E.2d 561 (7th Dist.1998), citing *McKay Machine Co. v. Rodman*, 11 Ohio St.2d 77, 80, 228 N.E.2d 304 (1967). Shoemaker testified that B & J drafted the contract. (Tr. 183, 186). Thus, the ambiguous term "pool package" is construed against B & J.

{¶42} Given this interpretation, the triggering event for the second installment payment never occurred. While some components of the "pool package" were delivered, the entirety of the "pool package" was never delivered to the Bovas' residence. Joseph Bova testified that despite the fact that the "pool package" had not been delivered, he gave B & J the second installment payment. (Tr. 44-46). Bova stated Shoemaker asked him for the second installment because Shoemaker needed the money. (Tr. 44). It stands to reason that if the second installment payment never became due and owing, the third installment payment would likewise not be due.

{¶43} Moreover, the triggering condition for the third installment payment was "concrete ready for paint." On November 18, 2019, B & J painted the pool floor. (Tr. 64). But the paint did not adhere. (Tr. 66). The Bovas had to pay another company to re-paint the pool. (Tr. 66). Thus, it is questionable whether the concrete was "ready to paint" when B & J painted it.

**{¶44}** Because the evidence demonstrated that the triggering events did not occur to require the Bovas to pay the second, and possibly the third, installment payments, the Bovas cannot be said to have anticipatorily breached or repudiated the contract.

**{¶45}** Accordingly, B & J's second assignment of error is without merit and is overruled.

**{¶46}** For the reasons stated above, the trial court's judgment is reversed as to the unjust enrichment claim. The judgment is affirmed as to the breach of contract claim. The matter is remanded with instructions to the trial court to modify the damages award in favor of the Bovas to $35,255.48, stemming from the breach of contract claim.

Waite, J., concurs.

D'Apolito, P.J., concurs.

---

For the reasons stated in the Opinion rendered herein, B & J's first assignment of error is sustained. B & J's second assignment of error is overruled. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio is affirmed as to the breach of contract claim. It is reversed as to the unjust enrichment claim. Further, the matter is remanded with instructions to the trial court to modify the damages award in favor of the Bovas to $35,255.48, stemming from the breach of contract claim. Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**